The TORO COMPANY and Toro Credit Company, Plaintiffs,

v.

KROUSE, KERN & COMPANY, INC.; K. Paul Kauffman; and John Doe, Defendants.

Civ. No. F 85–517.

United States District Court, N.D. Indiana, Fort Wayne Division.

Oct. 1, 1986.

Howard B. Sandler and Thomas J. Goeglein, Fort Wayne, Ind., for plaintiffs.

David A. Baugh, Chicago, Ill, Ralph R. Blume, Fort Wayne, Ind., for defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on a motion for summary judgment filed by the defendants, Krouse, Kern & Company, Inc. and K. Paul Kauffman (Krouse). Plaintiffs Toro Company and Toro Credit Company (Toro) have responded to the motion, and Krouse has filed a reply. The court heard oral argument on July 23, 1986. For the reasons which follow, Krouse's motion for summary judgment will be granted.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, the court must keep in mind that the entry of summary judgment terminates the litigation, or an aspect thereof, and must draw all inferences from the established or asserted facts in favor of the non-moving party. *Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985). The non-moving party's reasonable allegations are to be accepted as true for purposes of summary judgment. *Yorger v. Pittsburgh Corning Corp.,* 733 F.2d 1215, 1218–19 (7th Cir.1984). A party may not rest on the mere allegations of the plead-

ings or the bare contention that an issue of fact exists. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

Toro commenced this action on December 30, 1985. The dispute concerns certain accounting services provided by Krouse to Summit Power Equipment Distributors, Inc. (Summit), a distributor of Toro products in Indiana. Specifically, the case involves three audit reports issued by Krouse after the examination of Summit's records for the fiscal years involved: (1) the 1981 report, dated February 17, 1982; (2) the 1982 report, dated December 22, 1982; and (3) the 1983 report, dated March 28, 1984.

Toro alleges that in reliance upon representations made in the audit reports, it extended and renewed large amounts of credit to Summit. The complaint further alleges that the reports overstated Summit's assets, and that Summit ultimately became unable to repay these amounts which never would have been extended in the first place had the auditing reports been accurate.

The circumstances regarding the furnishing of the reports, Krouse's knowledge of the uses to which Summit would put them, and the degree and kind of contact between Krouse and Toro are the material issues of fact. Whether these issues preclude the granting of summary judgment at this point depends on the standard of care which accountants are legally bound to meet in this situation, a question which has yet to be addressed in Indiana.

In addition to this substantive legal issue, Krouse raises two other questions. First, it argues that the court may not consider certain portions of the affidavits provided by Toro in support of its opposition to Krouse's motion since they fail to meet the standards set forth in Rule 56(e). Second, Krouse maintains that two of the three reports were issued, and therefore any harm to Toro was suffered, more than two years prior to the filing of the complaint. As a result, argues Krouse, these reports cannot be considered as a basis for any of Toro's claims since they fall outside the applicable statute of limitations.

This order considers the issue regarding compliance with Rule 56(e) first in order to establish what facts may be considered in this motion. Once determined, these facts will be applied to the standard of accountant liability which this court believes the Indiana Supreme Court would find as the law of this state were it to consider the issue. *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *Neofes v. Robertshaw Controls Co.*, 409 F.Supp. 1376, 1379–80 (S.D.Ind.1976). The statute of limitations issue will be addressed last.

## I. Sufficiency of Affidavits

Rule 56(e) is an integral part of the standard set forth in Rule 56(c). It is designed to ensure that only reliable evidence will be considered in determining whether a genuine issue of material fact exists. It reads in part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

.    .    .    .    .

This rule has been construed in conformance with its underlying objective of putting only reliable evidence before the court, while loosening the rigid evidentiary requirements necessary at trial where appropriate. For example, the Seventh Circuit has refused to consider exhibits offered in connection with a motion for summary judgment when they were not identified by affidavit or otherwise made admissible in evidence, *Matz v. Union Labor Life Insurance Co.*, 757 F.2d 135, 138 (7th Cir.1985), but has indicated that affidavits themselves may be considered in such a motion even if not in a form that would be admissible as evidence as long as it is clear that their content would be admissible. *First Nat'l Bank Co. of Clinton, Ill. v. Insurance Co. of North America*, 606 F.2d 760, 766 (7th Cir.1979). This approach is consistent with

recent Supreme Court statements on this subject:

We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.

*Celotex Corp. v. Catrett,* — U.S. —, —, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 2738 (1983).

This court has used a similar standard in testing the sufficiency of affidavits for purposes of a motion for summary judgment:

If the affidavits contain inadmissible allegations, the court must disregard those allegations and consider only "the admissible portion in determining whether to grant or deny the [summary judgment] motion." *Lee v. Nat'l Life Assurance Co.,* 632 F.2d 524, 529 (5th Cir. 1980).

*Roberts v. Hochstetler,* 592 F.Supp. 703, 706 (N.D.Ind.1983).

Krouse argues that many of the statements contained in the affidavits of Toro which accompany its opposition to Krouse's motion fail to meet this admissibility standard. It claims that many statements found in the three affidavits provided by Toro are either conclusory, hearsay, or not made on personal knowledge, and therefore inadmissible.

An assessment of this argument requires a close examination of the affidavits in question. The first affidavit is that of John Fiedler, bookkeeper and controller of Summit. Paragraph 2 of the affidavit states that "he has personal knowledge of the facts set forth herein, and is competent to testify to such matters." Two subsequent paragraphs qualify this statement by prefacing certain allegations with "to the best of affiant's knowledge and belief." *See* Fiedler Affidavit, Paragraphs 5, 10. The second affidavit, that of Peter K. McDonough, Sr., president of Summit, has a similar format, and indeed contains many paragraphs which are verbatim reiterations of those in Fiedler's. Paragraphs 5 and 10 contain the same qualifying language. Statements based merely on knowledge and belief do not satisfy the standards of Rule 56(e) requiring personal knowledge. *Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1391, 1367 (8th Cir. 1983). The aforementioned paragraphs, which concern Toro's reliance on the reports and Krouse's knowledge of this fact, are therefore not properly considered because of this deficiency.

Defendants object to several other paragraphs in these affidavits on the basis that they are conclusory. In this regard, Rule 56(e) clearly indicates that facts stated in an affidavit must do more than state legal conclusions or even ultimate facts. Rather, to be considered in connection with a motion for summary judgment, facts must be stated with specificity, both to bolster their reliability and avoid the drawing of legal conclusions by persons other than those trained to do so. Because the range of statements which fall between appropriate specificity and improper conclusory statements runs along a continuum, bright lines can be difficult to draw. The Seventh Circuit has discussed this issue thoroughly, however, providing guidance in the instant case. In *Pfeil v. Rogers,* 757 F.2d 850 (7th Cir.1985), the court considered the adequacy of affidavits in connection with a case brought under 42 U.S.C. § 1983. It upheld the district court's exclusion of certain statements both because they were legal arguments and unsupported suspicion. The plaintiff accused the defendant district attorney of providing inaccurate legal advice to law enforcement officers and that he had conspired with them to kill his son's dogs. The Seventh Circuit reasoned:

Because legal argumentation is an expression of legal opinion and is not a recitation of a "fact" to which an affiant is competent to testify, legal argument in an affidavit may be disregarded. The plaintiff's argument that [the defendant's] advice was incorrect is legal argument and may not be considered as a recitation of fact to which the affiant was competent to testify; thus it may be disregarded. Furthermore, because the plaintiff's conclusion that [the defendant] conspired to illegally destroy the dogs is nothing more than unsupported suspicion and argumentation without foundation in the record, it likewise is without merit.

757 F.2d at 862.

Thus, in this instance, the court found two independent reasons for excluding the questioned statements in the affidavits. They were both impermissible legal argument and unsupported suspicions. Obviously, such statements will also not be made on personal knowledge, giving rise to another basis for exclusion.

■ Krouse challenges several statements in addition to those already considered in Toro's supporting affidavits on all of these grounds. Paragraph 7 of both the Fiedler and McDonough affidavits state that "Krouse, Kern and Kauffman were well aware that Toro was a major supplier of equipment to Summit Power." Paragraph 8 of both affidavits uses the same language in describing Toro's status as a major creditor of Summit. Paragraph 9 of the affidavits states that "Krouse, Kern and Kauffman well knew that Summit Power intended to supply copies of the 1981, 1982, and 1983 audit reports to Toro...." Beyond these conclusory statements which on their face could not be based on personal knowledge, the affidavits do not further elaborate on how the affiants became aware of the subjective knowledge of the defendants. Consequently, these statements resemble allegations more appropriate for pleadings than specific, nonconclusory facts in an affidavit offered in support of a party's position in a motion for summary judgment.

Other portions of these affidavits make similar allegations regarding the motives of Krouse. Another portion of Paragraph 9 of both the Fiedler and McDonough affidavits states that the defendants supplied multiple copies of the reports at issue "for distribution by Summit Power to its major suppliers and creditors, including Toro." Again, no further indication is provided as to how the affiants personally became aware of Krouse's motives in connection with its distribution of multiple copies of the reports. Paragraph 12 of McDonough's affidavit states that "[a]fter affiant met with [Toro's credit manager], [Toro's credit manager] made a telephone call to Kauffman to discuss the reported loss in the audit report." No indication is given that the affiant actually witnessed this phone conversation, and conspicuous by its absence is any affidavit by the credit manager involved.

■ All of the aforementioned portions of Toro's affidavits fail to meet the requirements of Rule 56(e). As discussed previously, the standard set forth therein for the adequacy of supporting affidavits is a high one, and the rule places an affirmative duty on the affiant to present statements which would be admissible at trial. It is conceivable that the substance of many of the paragraphs noted above might have been made admissible through a more specific rendition of facts demonstrating the personal knowledge of the affiants. Those paragraphs which state that Krouse knew of Toro's status as a major creditor and supplier of Summit, for example, might have been supported by a recitation of facts showing sufficient contact between the affiants and Krouse to render the statements admissible at trial. Indeed, such contact goes to the essence of this case, and Toro will not be permitted to short circuit its evidentiary burden by supplying statements in their affidavits which resemble pleadings more than actual evidence. The mere fact that introductory paragraphs in the affidavits recite that they are made on personal knowledge will not cure these deficiencies.

Consequently, that portion of Paragraph 5 of both the Fiedler and McDonough affidavits regarding their "knowledge and belief" of Toro's credit practices is not properly considered. This is of little consequence, however, since Borne's affidavit adequately covers the substance of these paragraphs. In addition, Paragraphs 7–10 and Paragraph 12 of the Fiedler affidavit fail to meet the standards of Rule 56(e), as well as the related Paragraphs 7–10 and Paragraph 13 of the McDonough affidavit. Finally, McDonough's statement in Paragraph 12 regarding the telephone conversation discussed therein also is not properly considered by the court.

The evidence properly before the court in connection with this motion for summary judgment, then, includes those portions of Toro's affidavits not excluded above, the affidavit of K. Paul Kauffman in support of defendants' motion for summary judgment, and the answers to interrogatories filed by Krouse on March 14, 1986.

## II. Accountant Liability

Toro's complaint alleges, in three counts, that Krouse was negligent, grossly negligent and recklessly indifferent, and that it committed constructive fraud upon Toro. Toro asserts that in reliance upon the Summit audit reports for 1981, 1982, and 1983 prepared by Krouse, it renewed its distributorship agreement with Summit, and extended and renewed large amounts of credit to Summit which Summit was unable to repay to Toro. Toro further asserts that it relied to its detriment upon these audit reports, and was subsequently damaged because they did not accurately reflect Summit's true financial condition.

Each count alleges that Krouse knew, should have known, or should have foreseen that: (1) Summit employed Krouse to provide financial information to various entities to obtain credit; (2) the audit reports prepared by Krouse would be supplied by Summit to such entities who would rely on them; and (3) Summit intended to and did submit these reports to Toro for the purpose and with the effect of inducing extensions and renewals of credit and the distributorship agreement.

The issue in this case is whether the standard of care that would be required of accountants under Indiana law is such that these allegations in conjunction with the evidence properly before the court are sufficient to present a genuine issue of material fact. Three different standards have evolved in various jurisdictions. This court must determine which of these the Indiana Supreme Court would adopt if presented with the issue.

The most restrictive standard, and the one urged upon the court by Krouse, was announced in *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931). The opinion, authored by Chief Judge Cardozo, disallowed a cause of action in negligence against a public accounting firm for inaccurately prepared financial statements which were relied upon by a plaintiff having neither contractual privity with the accountants, 174 N.E. at 448, nor a relationship "so close as to approach that of privity," *id.* at 441. That this is still the law of New York was confirmed recently in *Credit Alliance Corp. v. Arthur Anderson & Co.*, 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985). In elaborating upon the reasoning of *Ultramares, Credit Alliance* developed a set of criteria to determine whether the "privity or near-privity" standard had been met:

> Before accountants may be held liable in negligence to noncontractual parties who rely to their detriment on inaccurate financial reports, certain prerequisites must be satisfied: (1) the accountants must have been aware that the financial reports were to have been used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance.

493 N.Y.S.2d at 443, 483 N.E.2d 110.

Several states have followed this restrictive view of accountant liability, including

Florida, Illinois, and Iowa. *Credit Alliance* did acknowledge, however, that other jurisdictions have allowed recovery despite the absence of privity. 493 N.Y.S.2d at 439 n. 7, 483 N.E.2d 110 (citing cases both following and rejecting *Ultramares* standard).

The intermediate standard gaining favor among some jurisdictions permits recovery for those who are actually foreseen as parties who will and do rely upon the financial statements. This standard is set forth in the Restatement (Second) of Torts § 522 (1981). It provides in part:

§ 552. **Information Negligently Supplied for the Guidance of Others**

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Subsection (3) relates to public employees, and does not apply to this case.

The rationale supporting this extension of the standard is that a higher standard would stimulate improved accounting techniques and force accountants to insure against such liability, with the added costs passed along to clients. In this way, the risk of liability for accountants' negligence would be more fairly distributed. *See Rusch Factors, Inc. v. Levin,* 284 F.Supp.

85 (D.R.I.1968) (applying Rhode Island law). *See also Raritan River Steel Co. v. Cherry, Bekaert & Holland,* 339 S.E.2d 62 (N.C.Ct.App.1986) (modified Restatement test); *Haddon View Investment Co. v. Coopers & Lybrand,* 70 Ohio St.2d 154, 436 N.E.2d 212 (1982) (adopting Restatement).

Two jurisdictions have proceeded beyond the "actually foreseeable" test of the Restatement and adopted a "reasonably foreseeable" test. Under this standard, accountants owe a duty of care to all parties who are reasonably foreseeable recipients of financial statements for business purposes, provided the recipients rely on the statements pursuant to those business purposes. *See Rosenblum v. Adler,* 93 N.J. 324, 461 A.2d 138 (1983); *Citizens State Bank v. Timm, Schmidt & Co.,* 113 Wis.2d 376, 335 N.W.2d 361 (1983).

Indiana has yet to address the question of accountant liability squarely. At least one court, however, has speculated that Indiana would adopt the Restatement position. In *Seedkem, Inc. v. Safranek,* 466 F.Supp. 340, 344 (D.Neb.1979), the court, applying Indiana substantive law through application of Nebraska's choice of law rules, stated:

Significantly, both jurisdictions, Indiana and Nebraska, have followed the position taken by the Restatement in the area of strict liability in tort, and have abandoned the requirement of privity in that area. Seemingly, these jurisdictions, when faced with the issue [of accountant liability], could be expected to follow the position taken by the Restatement in this area as well and abandon the requirement of privity.

(Citations omitted). This analysis, however, is too shallow in light of Indiana cases addressing issues analogous to the specific issue of accountant liability raised herein.

Several cases have considered the general issue of professional liability to third parties who have had limited or no contact with the provider of services. A pair of early cases regarding abstractor liability provides initial guidance as to the attitude

of Indiana courts in this area. In *Brown v. Sims*, 22 Ind.App. 317, 53 N.E. 779 (1899), the landowner, hoping to borrow money from Brown, engaged Sims to prepare an abstract of title; Sims personally assured Brown that Brown could rely on the title being free of any defect or lien. In reliance on these assurances, Brown made a mortgage loan to the landowner. In fact, a lien had been recorded against the land, and Brown was left with a large deficiency when he was forced to foreclose the mortgage. The landowner being insolvent, Brown sued Sims. The trial court dismissed the complaint for want of a cause of action, and the appellate court reversed. The personal contact between the defendant and plaintiff in *Brown* was decisive. The abstractor delivered the abstract to the lender for his use, represented to the lender prior to the loan that the land was free from liens, and indicated to the lender that he could rely on the abstract in making the loan. *Id.* at 783.

This kind of personal contact was missing in *Ohmart v. Citizens' Savings & Trust Co.*, 82 Ind.App. 219, 145 N.E. 577 (1924). There, the defendant neglected to include judgment liens in an abstract of title prepared for the seller of certain real property. The purchaser, who was not dealing with either the seller or the savings and trust company at the time the abstract was prepared, was forced to satisfy the liens and sought redress against the savings and trust company. The directed verdict for the savings and trust company was affirmed. The court held that this result would have been appropriate even in the face of a custom in the community that the owner of real estate procure an abstract of title whenever a sale or incumbrance was sought. *Id.* at 578.

Both of these cases were discussed and relied upon in *Peyronnin Construction Co. v. Weiss*, 137 Ind.App. 417, 208 N.E.2d 489 (1965). *Peyronnin* involved a contractor's suit against engineers who had negligently provided excavation information to a subcontractor. The engineers had underestimated the cost of excavating a building site, and the prime contractor relied on the inaccurate figures in submitting its low bid on the job. In sustaining the demurrers, the court stated that there were no facts

> to show that an erroneous estimate was ever delivered to the appellant by the appellees, nor were there any promises or assurances made by appellees to appellant. In the case at bar we find no allegations of fact that there was any relationship existing between the parties to this appeal creating a duty of appellees to appellant.

*Id.* at 494–495.

The most recent Indiana case to discuss this general issue is *Essex v. Ryan*, 446 N.E.2d 368 (Ind.App.1983). There, subsequent purchasers of property filed suit against a surveyor who had allegedly conducted an inaccurate survey for the prior owner. The court held that the surveyor owed no duty to the plaintiffs because he had no knowledge they would rely upon his survey and because he was not in privity with them. *Id.* at 374. In reaching this conclusion, the court considered the three Indiana cases previously discussed above. The court agreed with the distinction drawn in these cases between actual knowledge that a third party will rely on the opinion given and an expectation that unidentified others might rely on it. It criticized the result in *Peyronnin*, however, by noting that the engineers did, in fact, know that the prime contractor would rely on the work they performed on behalf of the subcontractor, as evidenced by the direct contact between the engineers and the prime contractor. *Peyronnin* ignored this fact, and instead based its decision on the fact that there was no contractual relationship between the parties. 446 N.E.2d at 372.

*Essex* also explicitly considered two of the three standards for professional liability to third parties noted above. It quoted with approval the "privity or near-privity" standard as outlined in *Ultramares, supra,* while rejecting the "actually foreseeable" Restatement position. 446 N.E.2d at 373. In so concluding, the court expressed its concern regarding the undue expansion of

liability: "We are not convinced that the economic benefits accruing to consumer plaintiffs would outweigh the hazards of potential liability which abolition of the privity requirement would impose upon providers of professional opinions." *Id.*

It is clear that Indiana falls among those jurisdictions which follow the narrow *Ultramares* standard requiring either a contractual relationship between the parties or at least affirmative evidence of contact between the professional and the third party which indicates the professional's knowledge of the third party's reliance. In *Brown,* the only case to allow the cause of action to go forward, this contact was extensive and explicit.

The question then becomes the extent these general cases should be distinguished, if at all, from the specific instance of accountant liability. The court sees no reason why such a distinction should be made in this case. It is true that *Essex* was careful to limit its holding to the particular facts of that case, 446 N.E.2d at 373, but it appears that the limitation arose out of an abundance of caution rather than any peculiarities which set surveyors apart from other professionals. This is shown by the court's consideration of similar cases in many other fields, including accountants, attorneys, and abstractors. In addition, it considered the Restatement position extensively, which speaks only in general terms. Finally, it is especially significant that the court in *Essex* supported its ultimate conclusion by direct reference to *Ultramares,* an accountant case.

Certainly an examination of the nature of exposure experienced by surveyors who negligently render their services as compared with accountants does not suggest that accountants should be subject to a more liberal standard. If such a comparison is at all helpful, it counsels the opposite conclusion. Surveyors generally base their opinions on fewer calculations from fewer sources than do accountants. This fact is readily demonstrated by Krouse's answer to Toro's Interrogatory No. 8, which recounts in detail the accounting methods and procedures utilized by Krouse in conducting the Summit audits. Fourteen procedures are outlined, each involving detailed examination and confirmation of various financial records and transactions.

■ Thus, despite the lack of direct authority, this court is convinced that Indiana's experience in related cases indicates that it would not deviate from the consistent path it has taken with professionals in general when considering accountant liability in particular. While it is doubtless true that some of the cases from other jurisdictions discussed in early Indiana cases have since been overruled in the wake of progressive trends typified by the Restatement position, Indiana has given en no indication to date of any inclination to follow suit. *Essex,* especially, reflects a conscious policy choice in favor of limiting the exposure of professionals. This court is in no position, nor is it inclined, to reverse this trend. Predicting the direction of state law on a novel question is inherently a backward-looking process. The view in this case is clear. This court holds that Indiana would continue to adhere to the "privity or near-privity" standard as set forth in *Ultramares* and discussed in detail in *Credit Alliance, supra.*

When this standard is applied to the facts as developed in this case, Krouse's motion for summary judgment should be granted. This conclusion is safely reached even before determining whether the 1981 and 1982 reports fall outside the statute of limitations, an issue considered below. Indeed, it would even be true if the court were to consider the defective paragraphs of Toro's affidavits.

In a motion for summary judgment, the court is bound to consider all the evidence, especially regarding disputed factual issues, in the light most favorable to the nonmoving party. The most comprehensive source of evidence in this case at this point is Krouse's answers to interrogatories. None of the detailed information contained therein indicates conduct on Krouse's part which would rise to the standard set forth in *Credit Alliance.* Much of

this information is uncontradicted by Toro's affidavits, the most substantial source of evidence favorable to Toro. To the extent that factual conflicts do exist, none of the paragraphs in the affidavits, defective or otherwise, are sufficient to survive a motion for summary judgment under the *Credit Alliance* standard. Toro's affidavits and the other evidence before the court reasonably could be construed as meeting the first two prongs of this three-part test. That is, a reasonable inference can be made that Krouse knew that the reports it furnished to Summit were to be used by Summit to induce Toro's extension of credit and distributing rights based on Toro's reliance on the information contained in the reports.

■ It is on the third prong of the test, however, that the complaint and supporting evidence fail. With one exception, there is no indication of conduct which can be remotely construed as providing the necessary "near-privity" link between Krouse and Toro. The exception is contained in Paragraph 12 of the McDonough affidavit, previously discounted as inadmissible and therefore not properly considered by the court. Because of its importance as the only connection, admissible or inadmissible, between Toro and Krouse, it merits some discussion. In the latter portion of Paragraph 12, McDonough makes the following statement:

> On April 13 or 14, 1978, Bob Costello, a credit manager with Toro, flew to Fort Wayne, Indiana, to meet with affiant to discuss [a reported loss for 1976]. After affiant met with Mr. Costello, Mr. Costello made a telephone call to Kauffman to discuss the reported loss in the audit report.

This attenuated link between Toro and Krouse cannot serve to defeat the granting of summary judgment in this case. As previously discussed, McDonough's reference to the content of any phone conversation is inadmissible hearsay, especially in view of the fact that he offers no indication as to how he knew that the call ever took place. If he were privy to the conversation by way of a speaker phone, for instance, Rule 56(e) places upon him an affirmative obligation to state this fact to verify his personal knowledge that the conversation took place. This at least would demonstrate some kind of connection between Toro and Krouse, although the hearsay issue still would remain as to the content of the conversation. More fundamentally, however, this paragraph refers to a conversation which took place years before the allegations which form the basis of Toro's complaint. Its value as evidence is minimal, and by itself is insufficient as a matter of law to present a jury question. This is especially true since the paragraph indicates that Toro contacted Krouse. The third part of the *Credit Alliance* test requires "conduct *on the part of the accountants* linking them to [Toro]." 493 N.Y.S.2d at 443, 483 N.E.2d 110 (emphasis added). It is doubtful that an unsolicited contact from Toro to Krouse, which is all that Paragraph 12 suggests, would satisfy the test.

Similarly, other paragraphs in Toro's affidavits fail to present evidence which shows the necessary connection between plaintiffs and defendants. They clearly show a relationship among three parties, with Summit forming the joint between Toro and Krouse. The third side of the triangle, however, remains open.

The comprehensive answers to interrogatories fail to provide evidence which would close this gap. Detailed information is provided regarding the employees of Krouse involved in the Summit audits over the years, the methods employed in conducting the audits, and the extent of Krouse's knowledge of Summit's dealings with Toro. Regarding this last issue, Krouse indicates that it was "aware that a buyer-seller relationship existed between Summit and Toro, and that occasional credit was extended by Toro to Summit," as shown by open accounts and future-dated payables. Krouse's Answer to Interrogatory No. 31. Krouse also indicates that it had "no direct knowledge that Toro examined the resultant audit reports for the purpose of decid-

ing whether to extend or renew credit to Summit, Krouse's Answer to Interrogatory No. 34, and specifically denies any communication between itself and Toro, Krouse's Answer to Interrogatory No. 40.

One item of information provided by Krouse in its answers to interrogatories is somewhat puzzling, but otherwise insignificant. A series of questions posed by Toro relates to any lost documents pertaining to Summit audits. Krouse indicates that it cannot locate the signed Engagement Letter regarding the audit of Summit for the reporting year ending November 30, 1983. Krouse further states that its policy is not to release audit reports until this letter has been received, and assumes that it was misfiled or misplaced. Krouse's Answer to Interrogatories Nos. 17–18. In response to the next question regarding Krouse's opinion as to where the document may be located presently, Krouse states that "[t]he plaintiffs may have in their possession the signed Engagement Letter regarding the November 30, 1983 audit." No clue is provided as to how Toro may have come into possession of this letter which ordinarily would have concerned only the contractual relationship between Krouse and Summit, and, as standard practice, was retained by Krouse in its own files. This fact, however, cannot serve as the basis for satisfying the third part of the *Credit Alliance* test. Even construed in the light most favorable to Toro, the requisite degree of intent is missing. The three aspects of the evidence on this particular point are not necessarily in conflict: (1) Krouse's standard practice is to keep such letters on file; (2) Krouse either misplaced or misfiled the letter; and (3) it may be in the possession of Toro. Thus, there is no temptation to weigh these elements in reaching any conclusion on the pending motion, a practice clearly inappropriate in a motion for summary judgment. Rather, considered as a whole, these three facts still fail to demonstrate intentional conduct on the part of Krouse that would evidence the necessary relationship between it and Toro. They do present something of a mystery, but not one so significant that Toro felt a need to

further develop the facts on this point, or even bring it to the court's attention.

Finally, Krouse's affidavit, as the remaining evidence before the court, similarly fails to aid Toro in its effort to defeat Krouse's motion. The paragraphs therein state unequivocally that Krouse had no contacts of any kind with Toro or its representatives. Although Toro does not raise the point, the first part of Paragraph 5 of the affidavit contains the improper legal conclusion that "[t]here existed no contractual privity between Toro and defendants." The exclusion by the court of this language in its consideration of the motion now pending does not alter its conclusion that the affidavit contains no material beneficial to Toro.

The previous discussion of the evidence shows that the strength of Toro's case rises or falls according to the legal standard upon which it is judged. Because Indiana would adopt the most restrictive of the three standards currently used to determine the availability of a cause of action to third parties allegedly injured by negligently performed services by an accountant, Krouse's motion for summary judgment must be granted. None of the evidence presents a genuine issue as to whether Krouse had the necessary contact with Toro which evinces Krouse's understanding of Toro's actual reliance on the reports Krouse furnished to Summit.

### III. Statute of Limitations

While it is unnecessary to determine the applicability of the statute of limitations in light of Toro's failure to meet the substantive legal standard regarding accountant liability, it will nonetheless be considered briefly. This issue as raised and argued by the parties would not be dispositive of the entire case; rather, it raises the question whether two of the three reports which form the basis of Toro's complaint would be barred by the statute.

Both parties agree that the applicable statute of limitations is I.C. 34–1–2–2 regarding injuries to personal property. *Babson Bros. Co. v. Tipstar Corp.*, 446

N.E.2d 11, 14 (Ind.App.1983), explained the operation of this statute as follows:

> Our statute is an accrual statute, such that a cause of action accrues at the time injury is produced by wrongful acts for which the law allows damages susceptible of ascertainment. The statute of limitations begins to run at the time a complete cause of action accrues or arises or when a person becomes liable to an action.

These principles were further explained in *Monsanto Co. v. Miller*, 455 N.E.2d 392, 394 (Ind.App.1983):

> It is not necessary that the extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred. Failure to discover a right to bring suit does not operate to suspend the statute of limitations. Likewise, no new cause of action will accrue when consequential damages arise from a prior injury and damage too slight to be noticed when inflicted.

Thus, the question in the case at bar is when the element of damage occurred so as to give rise to a cause of action. The parties have raised several possible dates for consideration. These include: the dates the reports were completed by Krouse; the dates Krouse gave the reports to Summit; the dates shortly thereafter but not specified in the record when Summit passed the reports along to Toro; the dates on which Toro extended credit in reliance on the reports; and the date on which Summit became unable to repay its obligations to Toro. The earliest of these potential accrual dates is easily eliminated. At the time Krouse completed the allegedly negligently prepared reports, no damage had occurred since the inaccurate contents of the reports had not been communicated to anyone. When Krouse provided the reports to Summit, Summit suffered damages, however slight, that began the statute running as to a potential cause of action by Summit against Krouse. Similarly, Toro's cause of action would have arisen at the time it first suffered damage upon the receipt of the reports from Summit. The remaining dates reflecting Toro's extension of credit and its subsequent inability to collect speak only to consequential damages which may have made the amount of compensation due from a liable party more ascertainable, but has no relevance as to the accrual of the cause of action.

Therefore, if a different standard of liability applied in this case that would permit Toro to go forward with its cause of action, the dates that Toro received the reports at issue would control as to the statute of limitations issue. Further evidence would have to be developed on this point, since these dates are not apparent from the record. Presumably, however, Toro would have received the reports from Summit shortly after Summit received them from Krouse. In all likelihood, therefore, this would result in the elimination of the 1981 and 1982 reports as elements of the cause of action.

## IV. Conclusion

The crux of this motion for summary judgment revolves around the determination of the proper standard of liability to which accountants are held in Indiana. Despite the general drift of many jurisdictions toward the more liberal standard typified by § 552 of the Restatement, Indiana has given every indication that it would continue to adhere to the standard first enunciated in *Ultramares* and recently reaffirmed in *Credit Alliance*. While *Essex*, the most recent Indiana case to consider the general issue, limited its holding to surveyors, there is no practical reason why it should not be useful authority in this case, especially since it follows principles consistently applied in Indiana since at least 1899. As a result, the evidence developed thus far, when construed in the light most favorable to Toro as the nonmoving party, fails to present a genuine issue of material fact.

This is true even if the clearly defective portions of Toro's affidavits are considered, as they properly should not be. Rule 56(e) is forthright in its demand for affidavits which consist of admissible facts rather than statements not made on personal

knowledge, statements which make legal conclusions, or conclusory statements.

Were Toro's cause of action to survive Krouse's motion, it probably would do so only in a more limited form. The application of the statute of limitations would most likely bar any cause of action which relies on the 1981 and 1982 reports.

Therefore, for all of the foregoing reasons, Krouse's motion for summary judgment is hereby GRANTED.