827 F.2d 155
 56 USLW 2117
 The TORO COMPANY, a Minnesota Corporation and Toro Credit
Company, a Minnesota Corporation, Plaintiffs-Appellants,
v.
KROUSE, KERN & COMPANY, INC., F. Paul Kauffman, and John
Doe, Defendants- Appellees.
 No. 86-2800.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 8, 1987.
Decided Aug. 19, 1987.
 
 Edward F. Fox, Doherty Rumble & Butler, Minneapolis, Minn., for plaintiffs-appellants.
 David Baugh, Karon, Morrison & Savikas, Ltd., Chicago, Ill., for defendants-appellees.
 Before WOOD, COFFEY, and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 In this diversity case, we are asked to review the judgment of the district court which held that the defendant accounting firm and individual accountants were not liable for alleged negligence to the plaintiff corporations, third parties who allegedly relied upon the reports of the accountants in extending credit to the accountants' client. For the reasons set forth in the following opinion, we affirm the judgment of the district court.
 
 
 2
 * Background
 
 
 3
 This case involves certain accounting services provided by an accounting firm, Krouse, Kern & Company, Inc. (Krouse) to Summit Power Equipment Distributors, Inc. (Summit) for the fiscal years 1981, 1982 and 1983. In each of those years, Krouse prepared yearly audit reports and monthly financial statements for Summit. During the same period, Toro Company was a major supplier of equipment to Summit, and its wholly-owned subsidiary, Toro Credit Company (Toro), was a major supplier of credit to Summit. Toro required audited reports from Summit in order to evaluate the distributor's financial condition. Summit supplied Toro with the reports prepared by Krouse to fulfill this requirement. The reports allegedly contained mistakes and omissions regarding Summit's actual financial condition.
 
 
 4
 Toro brought this action in the district court. Jurisdiction was based on diversity of citizenship. 28 U.S.C. Sec. 1332. Toro alleged that, in reliance upon the audit reports, it extended and renewed large amounts of credit to Summit. The reports overstated Summit's assets, the complaint continued, and Toro extended credit that it would not have extended if the reports had been accurate. Summit was unable to repay these amounts. Krouse filed a motion for summary judgment that was granted by the district court. This appeal followed.
 
 II
 Holding of the District Court
 A. Standard of Care
 
 5
 In an exhaustive and scholarly opinion, the district court analyzed the central issue in this case--the appropriate standard of care required of accountants under Indiana law. Surveying the law of the states of the Union, the court isolated three standards: 1) the Ultramares standard; 2) the Restatement standard; and 3) the "Reasonably Foreseeable" standard.
 
 1. The Ultramares Standard
 
 6
 This standard was first announced by the New York Court of Appeals in Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441 (N.Y.1931). There, Chief Judge Cardozo disallowed a negligence action against an accounting firm brought by a plaintiff who had neither contractual privity, Id. 174 N.E. at 446, nor a relationship "so close as to approach that of privity." Id. Recently, in Credit Alliance Corp. v. Arthur Andersen & Co., 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985), the New York Court of Appeals reaffirmed its reliance on the Ultramares standard:
 
 
 7
 Before accountants may be held liable in negligence to noncontractual parties who rely to their detriment on inaccurate financial reports, certain prerequisites must be satisfied: (1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance.
 
 
 8
 Id. 493 N.Y.S.2d at 443, 483 N.E.2d at 118.
 
 2. The Restatement Standard[1]
 
 9
 This standard permits recovery for those who can be actually foreseen as parties "who will and do rely upon the financial statements." Toro Co. v. Krouse, Kern & Co., 644 F.Supp. 986, 992 (N.D.Ind.1986) [hereinafter cited as Order]. In pertinent part, section 552 of the Restatement (Second) of Torts reads as follows:
 
 
 10
 (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
 
 
 11
 (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
 
 
 12
 (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
 
 
 13
 (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
 
 3. The "Reasonably Foreseeable" Standard
 
 14
 The district court determined that "[t]wo jurisdictions have proceeded beyond the 'actually foreseeable' test of the Restatement and adopted a 'reasonably foreseeable' test. Under this standard, accountants owe a duty of care to all parties who are reasonably foreseeable recipients of financial statements for business purposes, provided the recipients rely on the statements pursuant to those business purposes. See Rosenblum v. Adler, 93 N.J. 324, 461 A.2d 138 (1983); Citizens State Bank v. Timm, Schmidt & Co., 113 Wis.2d 376, 335 N.W.2d 361 (1983)." Order at 992.
 
 
 15
 The district court then noted that Indiana had not yet had occasion to address directly the question of accountant liability. The district court therefore turned to an analysis of Indiana cases that had addressed the issue of professional liability "to third parties who have had limited or no contact with the provider of services." Id. at 992. After surveying the early cases, Brown v. Sims, 22 Ind.App. 317, 53 N.E. 779 (1899); Ohmart v. Citizens' Sav. & Trust Co., 82 Ind.App. 219, 145 N.E. 577 (1924); Peyronnin Constr. Co. v. Weiss, 137 Ind.App. 417, 208 N.E.2d 489 (1965), the court focused on the more recent holding in Essex v. Ryan, 446 N.E.2d 368 (Ind.Ct.App.1983). There, subsequent purchasers of property sued a surveyor who allegedly had made an inaccurate survey for the prior owner. After considering the three cases noted above, the Essex court held that the surveyor owed no duty to the successor owners because he had no knowledge that they would rely on his survey. The district court noted that the Indiana court in Essex had explicitly considered the three approaches for professional liability outlined above and had quoted with approval the "privity or near-privity" standard as outlined in Ultramares and had specifically rejected the "actually foreseeable" Restatement position. Id. at 373.
 
 
 16
 On the basis of this survey of the earlier cases, the district court concluded:
 
 
 17
 It is clear that Indiana falls among those jurisdictions which follow the narrow Ultramares standard requiring either a contractual relationship between the parties or at least affirmative evidence of contact between the professional and the third party which indicates the professional's knowledge of the third party's reliance. In Brown, the only case to allow the cause of action to go forward, this contact was extensive and explicit.
 
 
 18
 Order at 994.
 
 
 19
 The district court did not believe that the present situation should be distinguished from that presented in Essex. The district judge noted that the Indiana court in Essex had considered similar cases involving many other professions, including accountants. Moreover, noted the district court, the Essex court had squarely considered and rejected the Restatement position while relying on New York's Ultramares decision. Nor did the district court believe that there was any policy reason that might induce the Indiana courts, when confronted with the issue, to adopt a different standard in the case of accountants:
 
 
 20
 Certainly an examination of the nature of exposure experienced by surveyors who negligently render their services as compared with accountants does not suggest that accountants should be subject to a more liberal standard. If such a comparison is at all helpful, it counsels the opposite conclusion. Surveyors generally base their opinions on fewer calculations from fewer sources than do accountants. This fact is readily demonstrated by Krouse's answer to Toro's Interrogatory No. 8, which recounts in detail the accounting methods and procedures utilized by Krouse in conducting the Summit audits. Fourteen procedures are outlined, each involving detailed examination and confirmation of various financial records and transactions.
 
 
 21
 Id. at 994.
 
 
 22
 B. Application of Standard to Facts of this Case
 
 
 23
 The district court then turned to an analysis of the facts of the case contained in the material submitted to it in support of and in opposition to the motion for summary judgment. It determined that Toro's submissions reasonably could be construed as meeting the first two prongs of the Credit Alliance test. A "reasonable inference can be made that Krouse knew that the reports it furnished to Summit were to be used by Summit to induce Toro's extension of credit and distributing rights based on Toro's reliance on the information contained in the reports." Id. at 995.
 
 
 24
 However, the district court determined that, on the third prong, "the complaint and the supporting evidence fail." Id. Toro's affidavits, concluded the district court, "fail to present evidence which shows the necessary connection between plaintiffs and defendants. They clearly show a relationship among three parties, with Summit forming the joint between Toro and Krouse. The third side of the triangle, however, remains open." Id. at 995. The court failed to find in the remaining material submitted by either Toro or Krouse any allegation that would close the gap.[2] Accordingly, it concluded:Because Indiana would adopt the most restrictive of the three standards currently used to determine the availability of a cause of action to third parties allegedly injured by negligently performed services by an accountant, Krouse's motion for summary judgment must be granted. None of the evidence presents a genuine issue as to whether Krouse had the necessary contact with Toro which evinces Krouse's understanding of Toro's actual reliance on the reports Krouse furnished to Summit.
 
 
 25
 Id. at 996.
 
 
 26
 Finally, the district court turned to the statute of limitations issue. While its disposition of the liability issue made it unnecessary to reach this question, the district court held that
 
 
 27
 if a different standard of liability applied in this case that would permit Toro to go forward with its cause of action, the dates that Toro received the reports at issue would control as to the statute of limitations issue. Further evidence would have to be developed on this point, since these dates are not apparent from the record. Presumably, however, Toro would have received the reports from Summit shortly after Summit received them from Krouse. In all likelihood, therefore, this would result in the elimination of the 1981 and 1982 reports as elements of the cause of action.
 
 
 28
 Id. at 997.
 
 III
 Discussion
 A.
 
 29
 As the district court correctly noted, this case turns upon a proper identification of the standard of liability imposed upon accountants under the law of Indiana. We therefore address that question first.
 
 1. The Submissions of the Parties
 
 30
 Toro acknowledges that Indiana has not adopted the Restatement standard. However, it argues that just because Indiana has rejected the Restatement position, it cannot be assumed that it has embraced the Ultramares standard. Rather, submits Toro, Indiana would impose liability not only when there is privity between the accountant and the injured party but also when there is actual knowledge on the part of the accountant that the injured party will rely on the work product. Appellants' Br. at 18. This standard is required, it submits, by the holding of the Supreme Court of Indiana in Citizens Gas & Coke Util. v. American Economy Ins. Co., 486 N.E.2d 998 (Ind.1985) where the court, discussing Essex, wrote, "[t]he surveyor owed no duty to subsequent purchasers of property because he had no knowledge they would rely on his survey and because he was not in privity with them." 486 N.E.2d at 1001.
 
 
 31
 Toro continues by urging that sound policy reasons support its view as to the content of Indiana law. The audited financial report, it notes, "has been singled out by both federal and state legislation to be an important vehicle to encourage public confidence in the accuracy of financial information." Appellants' Br. at 20. Moreover, "the business community has long recognized the responsibility a certified public accountant owes the public when engaged in an audit." Id. at 21. The appellants note that the Supreme Court of the United States has stated:An independent certified public accountant performs a different role. By certifying the public reports that collectively depict a corporation's financial status, the independent auditor assumes a public responsibility transcending any employment relationship with the client. The independent public accountant performing this special function owes ultimate allegience to the corporation's creditors and stockholders, as well as to the investing public.
 
 
 32
 United States v. Arthur Young & Co., 465 U.S. 805, 817-18, 104 S.Ct. 1495, 1502-03, 79 L.Ed.2d 826 (1984). Finally, Toro notes that the Indiana licensing scheme for certified public accountants contemplates a person who "is not only technically competent, but ... [whose] ... financial reports ... are worthy of the public trust and confidence." Appellants' Br. at 22-23.
 
 
 33
 Krouse does not disagree with Toro on the identity of the controlling precedent and, like its opponent, grounds its argument on the holdings of the Supreme Court of Indiana in Citizens Gas and of the Indiana Court of Appeals in Essex. Its reading of those cases is, however, substantially different from that offered by its opponent. In Krouse's view, these Indiana cases set forth a test that is the equivalent of the test articulated by the Court of Appeals of New York in Ultramares and recently reaffirmed as the governing law in New York in Credit Alliance. Krouse notes that the Indiana Court of Appeals specifically relied upon the New York court's Ultramares holding in formulating its own holding in Essex. In turn, the Essex case, submits Krouse, "provides an essential cornerstone of the [Indiana] supreme court's Citizen's Gas decision." Appellees' Br. at 18. There, the Supreme Court of Indiana, submits Krouse, reaffirmed the continued vitality of the privity principle in Indiana. Krouse also notes that the Essex court "specifically declined to adopt Sec. 552, Restatement (Second) of Torts (1977), that extends liability for supplying false information to any one or more of a group of persons for whose benefit and guidance a professional supplies information, even if the person who becomes the plaintiff is not known to the professional as an individual." Appellees' Br. at 18.
 
 2. Our Conclusion
 
 34
 We have noted in Lamb v. Briggs Mfg., 700 F.2d 1092, 1094 (7th Cir.1983) that:
 
 
 35
 [W]here no authoritative resolution of a legal issue had been rendered by the state courts, the district court's construction of state law on that issue is entitled to great weight on appellate review.... In addition, precisely because the district court enforcing a state-created right in a diversity case is in substance "only another court of the state," the federal court may not "substantially affect the enforcement of the right as given by the state."
 
 
 36
 (citations omitted). In this case, where the district court's decision on the content of state law is the product of a comprehensive, well-reasoned and carefully-crafted opinion, we should be especially mindful of this principle. Nevertheless, we have independently studied the pertinent Indiana case law and, on the basis of that study, believe that the district judge correctly stated the present state of the Indiana law.
 
 
 37
 We begin our analysis by noting that Indiana has made some firm policy choices in the area under consideration. As the Supreme Court of Indiana noted in Citizens Gas,
 
 
 38
 [t]he requirements of privity have been abolished by this Court and the Court of Appeals for products liability and contractor liability involving personal injury caused by a product or work in a condition that was dangerously defective, inherently dangerous or imminently dangerous such that it created a risk of imminent personal injury.
 
 
 39
 486 N.E.2d at 1000. This limited exception to the privity rule is based on a policy choice that, as a federal court whose jurisdiction is based on diversity of citizenship, we must accept. See generally Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 
 
 40
 The reason for Indiana's policy choice was stated succinctly by the Supreme Court of Indiana in Citizens Gas:
 
 
 41
 The reasoning behind all of these cases that has created the exception to the general requirement of privity is apparent and is based on humanitarian principles. One who sells a product or does construction work pursuant to a contract with the owner of a building or premises which presents imminent danger to the health and safety of not only the party he contracts with but to other members of the public can be held liable for resulting injuries even though the third party injured is not privy to the contract. It does not follow that the same exception would be applied where the risk is only that of property damage. In Essex v. Ryan (1983), Ind.App., 446 N.E.2d 368, 372, the Essexes sought to recover damages arising from a survey which Ryan had negligently performed for their predecessor in title in 1955. The Essexes claimed damages because of the deceased's professional incompetence and because they were assignees of their predecessors in interest. The Court of Appeals found, however, that the surveyor owed no duty to subsequent purchasers of property because he had no knowledge they would rely on his survey and because he was not in privity with them.
 
 
 42
 486 N.E.2d at 1000-01.
 
 
 43
 It is true that, in those areas where privity still applies, there exists an "actual knowledge" exception. See Essex, 446 N.E.2d at 373. However, this "actual knowledge" exception, as articulated by the Indiana courts, is a very narrow and specific one. It requires proof that the defendant had actual knowledge that the particular person or entity bringing the law suit "would rely on the information given." Essex, 446 N.E.2d at 372. In short, the Indiana courts have made a "distinction between knowledge that a third party will rely on the opinion given and an expectation that unidentified others might rely on it." Id. (emphasis in original).
 
 
 44
 We further believe that the district court was correct when it held that this "actual knowledge" exception to the privity rule was the functional equivalent of the Ultramares test's insistence on "near privity." In explaining the Ultramares test, the New York Court of Appeals noted in Credit Alliance that Chief Judge Cardozo had distinguished the holding in Ultramares from Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275 (N.Y.1922). In Glanzer, noted the Credit Alliance court, the facts "bespoke an affirmative assumption of a duty of care to a specific party, for a specific purpose, regardless of whether there was a contractual relationship." 493 N.Y.S.2d at 441, 483 N.E.2d at 116. It was to preserve this distinction between Ultramares and Glanzer--the affirmative assumption of a duty of care to a specific party, for a specific purpose--that the Credit Alliance court developed the three-part analysis:
 
 
 45
 (1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance.
 
 
 46
 Id. 493 N.Y.S.2d at 443, 483 N.E.2d at 118. The last part of that test--the part that the district court did not believe was met in this case--is quite obviously meant to ensure there was "an affirmative assumption of a duty of care to a specific party, for a specific purpose." Id. 493 N.E.2d at 441, 483 N.E.2d at 116.
 
 
 47
 While Indiana has not had occasion to address the matter with quite the specificity found in the New York cases, we believe that a fair reading of the Indiana precedent, in its totality, establishes that the "privity requirement, subject to an actual knowledge exception," explicitly recognized in Essex, 446 N.E.2d at 373, is designed to preserve the same policy concern as the New York formulation. The Essex court relied explicitly on Ultramares. More importantly, in discussing the earlier Indiana precedent, it pointedly distinguished between those cases where the defendant had affirmatively undertaken to assist the plaintiff with respect to a particular task and those where there had been no such affirmative manifestation. In discussing Brown v. Sims, the Essex court noted that the defendant (a preparer of a title abstract) had personally assured the plaintiff that he could rely on the title's being free from any defect or lien. Essex, 446 N.E.2d at 372. By contrast, noted the Essex court, the savings and loan in Ohmart, (which negligently prepared a title abstract) had no such relationship with the plaintiff. "The distinction ... was that in Brown, the abstractor understood that it was of the essence of his employment that a report be made to, and for the benefit of, a third party, the lender, Brown." Id. Again, in criticizing the holding in Peyronnin, the Essex court noted that "Weiss had actual knowledge that Peyronnin Construction would rely upon his work, and he was in contact with the company while preparing the estimates." Id. (emphasis in original).
 
 B.
 
 48
 We must next examine the record to determine whether, in light of the standard we have chosen, Krouse is entitled to prevail on summary judgment. The general standard governing the disposition of a motion for summary judgment is, of course, well-settled:
 
 
 49
 Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.
 
 
 50
 Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); see also Valley Liquors, Inc. v. Renfield Importers, Ltd., 822 F.2d 656, 659 (7th Cir.1987); Hossman v. Spradlin, 812 F.2d 1019, 1020-21 (7th Cir.1987).
 
 
 51
 Here, the parties engaged in a preliminary skirmish with respect to the affidavits submitted in support of and in opposition to the motion for summary judgment. They continue that debate in this court. While we shall not unnecessarily lengthen this opinion by specific reference to each phrase in each affidavit, our study of the briefs of the parties and our independent examination of the record convinces us that the district court was correct in its determination that several of the affidavit submissions did not fulfill the requirements of Fed.R.Civ.P. 56(e). They did not "set forth such facts as would be admissible in evidence...." Certainly, statements based merely on information and belief do not satisfy the standards of Rule 56(e).[3] Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1367 (8th Cir.1983). Conclusory statements are similarly unacceptable. Pfeil v. Rogers, 757 F.2d 850, 860-63 (7th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).
 
 
 52
 Our own study of the record leads us to the conclusion that the district court did not err in granting summary judgment. The appellants failed to raise a question of material fact as to an essential element of their claim of accountant liability--whether there was some conduct on the part of Krouse linking them to Toro. There is simply not "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Accordingly, the district court properly granted the motion for summary judgment.
 
 
 53
 Like the district court, we need not reach the statute of limitations issue because the affirmance of the summary judgment issue concludes the entire case.[4]
 
 Conclusion
 
 54
 Accordingly, the judgment of the district court is affirmed.
 
 
 55
 AFFIRMED.
 
 
 
 [1]
 There is one case from a federal district court holding that Indiana would adopt the "actually foreseeable" standard of care for accountants set forth in the Restatement (Second) of Torts Sec. 552. Seedkem, Inc. v. Safranek, 466 F.Supp. 340 (D.Neb.1979). The district court rejected the rationale of the Seedkem opinion and neither party argues that the Restatement standard should be adopted
 
 
 [2]
 The district court discussed at some length parts of the evidence that were problematic. It noted that paragraph 12 of the McDonough affidavit contained the following statements:
 On April 13 or 14, 1978, Bob Costello, a credit manager with Toro, flew to Fort Wayne, Indiana, to meet with affiant to discuss [a reported loss for 1976]. After affiant met with Mr. Costello, Mr. Costello made a telephone call to Kauffman to discuss the reported loss in the audit report.
 R. 31 at 4, p 12. The district court noted that this statement was inadmissible hearsay, "especially in view of the fact that [Mr. McDonough] offers no indication as to how he knew that the call ever took place." Toro Co. v. Krouse, Kern & Co., 644 F.Supp. 986, 995 (N.D.Ind.1986) [hereinafter cited as Order].
 More fundamentally, however, this paragraph refers to a conversation which took place years before the allegations which form the basis of Toro's complaint. Its value as evidence is minimal, and by itself is insufficient as a matter of law to present a jury question. This is especially true since the paragraph indicates that Toro contacted Krouse. The third part of the Credit Alliance test requires "conduct on the part of the accountants linking them to [Toro]." 493 N.Y.S.2d at 443, 483 N.E.2d 118 (emphasis added). It is doubtful that an unsolicited contact from Toro to Krouse, which is all that Paragraph 12 suggests, would satisfy the test.
 Order at 995. The district court also noted "the somewhat puzzling," order at 996, answer of Krouse to an interrogatory. After admitting it could not find the signed engagement letter for the reporting year ending November 1983, Krouse stated that the plaintiffs (Toro) may have it in their possession. The district court continued:
 Even construed in the light most favorable to Toro, the requisite degree of intent is missing. The three aspects of the evidence on this particular point are not necessarily in conflict: (1) Krouse's standard practice is to keep such letters on file; (2) Krouse either misplaced or misfiled the letter; and (3) it may be in the possession of Toro. Thus, there is no temptation to weigh these elements in reaching any conclusion on the pending motion, a practice clearly inappropriate in a motion for summary judgment. Rather, considered as a whole, these three facts still fail to demonstrate intentional conduct on the part of Krouse that would evidence the necessary relationship between it and Toro. They do present something of a mystery, but not one so significant that Toro felt a need to further develop the facts on this point, or even bring it to the court's attention.
 Order at 996.
 
 
 [3]
 Rule 56(e) of the Federal Rules of Civil Procedure requires that "[s]upporting and opposing affidavits shall be made on personal knowledge...." The appellants rely on, inter alia, statements in an affidavit they submitted in opposing the motion for summary judgment as "demonstrat[ing] numerous types of conduct on the part of Krouse 'linking' them to Toro within the meaning of Ultramares [Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441 (N.Y.1931) ] and Credit Alliance [Corp. v. Arthur Andersen & Co., 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985) ]." Appellants' Br. at 33-34; see R. 31 at 4, paragraphs 7-10, 12, 13. The district court determined that these statements were not based on personal knowledge and, thus could not be considered in determining whether there was a genuine issue of material fact. We agree
 Rule 56(e)'s requirement of personal knowledge is mandatory. 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure Sec. 2738, at 467 (2d ed. 1983). "[U]ltimate or conclusory facts and conclusions of law, as well as statements made on belief or 'on information and belief' cannot be utilized on a summary judgment motion." Id. at 486-89; see Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1367 (8th Cir.1983) (statement in affidavit of corporate head not within his personal knowledge); see also Pfeil v. Rogers, 757 F.2d 850, 860-63 (7th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).
 
 
 [4]
 Toro's motion to certify the question of the standard of care owed by an independent certified public accountant to his client's creditors is denied. As this opinion illustrates, while there is no directly controlling precedent in Indiana on accountant liability, there is sufficient precedent from which this court can determine how the Indiana courts would decide the issue if it were presented to them. We remind Toro that it had the option of filing the original action in an Indiana court