**In re the ESTATE OF Elmer DUKES, Deceased,**

**INDIANA DEPARTMENT OF STATE REVENUE INHERITANCE TAX DIVISION, Appellant (Petitioner Below),**

v.

**Robert H. RIDEOUT, Personal Representative of Estate, Appellee (Respondent Below).**

No. 4–1082A328.

Court of Appeals of Indiana, Fourth District.

Sept. 20, 1983.

Rehearing Denied Dec. 2, 1983.

Linley E. Pearson, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellant.

Robert H. Rideout, Boonville, for appellee.

CONOVER, Presiding Judge.

The State appeals the Warrick Circuit Court's denial of its petition for an order to pay inheritance tax. We affirm.

## ISSUE

Is an action to enforce payment of inheritance taxes currently barred?

## FACTS

The chronology of material events in this case is as follows:

(a) October 11, 1961, Elmer Dukes died intestate;

(b) October 27, 1961, Robert H. Rideout was appointed administrator of the Dukes estate;

(c) September 24, 1971, the administrator's final report was filed and approved;[1]

(d) November 8, 1971, pursuant to the administrator's filing of a petition therefor, the trial court determined the amount of inheritance tax due was $698.51 plus 6% interest from October 11, 1961;

(e) November 10, 1971, the administrator paid $698.51 to the county treasurer;

(f) November 11, 1971, the trial court approved the administrator's supplemental report of distribution, and discharged him;

(g) November 3, 1972, the attorney general's office filed a "Motion to Enforce Compliance with Court Order" on behalf of the State;

(h) September 22, 1981, the Warrick county prosecutor filed a "Petition for Order of Payment of Inheritance Tax" in the original Dukes estate.

The trial court denied the prosecutor's petition, finding by lapse of time no one liable for the tax was available to be sued. The State appeals.

## DISCUSSION AND DECISION

All actions concerning inheritance taxes are statutory. We strictly construe tax statutes in favor of taxpayers. *Indiana Department of State Revenue v. Estate of Puett,* (1982) Ind.App., 435 N.E.2d 298, 301–02. Further, we uphold a trial court if its judgment is sustainable on any legal theory supported by the record. *Havert v. Caldwell,* Ind., 452 N.E.2d 154; *Indiana Department of State Revenue v. Estate of Cohen,* (1982) Ind.App., 436 N.E.2d 832, 834. The crux of this appeal is whether appropriate action was timely taken by a duly-authorized agency.

### A. *Who Should Have Taken What Action*

The statute governing who should have taken what action to enforce payment of inheritance taxes is Ind.Code 6–4.1–9–11[2] which reads in part as follows:

> If a county treasurer believes that a person has failed to pay inheritance tax for which he is liable, the county treasurer shall give the county prosecuting attorney written notice of the person's failure to pay. When the prosecuting attorney receives such a notice, he shall ask the

---

**1.** On September 1, 1971, the administrator "showed" the court the Indiana inheritance taxes had been paid. The September 24, 1971, order states, in two places, the inheritance tax due had been paid, even though the amount was not even determined at that time.

**2.** Effective February 18, 1976, IC 6–4.1–9–11 essentially restates and recodifies IC 6–4–1–15, which was in effect when Elmer Dukes died. The legislature made no substantive changes, but merely updated the language and syntax of the old statute.

appropriate probate court to order the person to appear before the court to show why the tax has not been paid. If the court believes that inheritance tax is due and that payment of the tax cannot be enforced under the other provisions of this article, the court shall direct the prosecuting attorney to initiate an action in the name of the county to enforce payment of the tax. Every person who is liable for the inheritance tax is liable to the county in whose name the action is initiated.

■ Under this statute the county prosecuting attorney is the only person who may initiate such proceedings.[3] The Attorney General has no such authority. In 1972, his office filed a paper entitled "State's Motion to Enforce Compliance with Court Order." Not only did the wrong agency take action, it took the wrong action. In the first instance, the appropriate action was to, (a) obtain an order to show cause why the tax had not been paid, then (b) initiate an action to enforce payment of the tax. Here, the record shows the administrator never was ordered to appear and show cause why the tax had not been paid. This failure to comply with statutory requirements renders the Attorney General's 1972 action ineffective for any purpose, given our rule construing tax statutes in favor of taxpayers.[4]

The 1981 attempt to collect the taxes does not suffer from these deficiencies, however. The county prosecutor obtained the necessary order to show cause against Rideout. But again, at this point, a new flaw in the State's procedural fabric appears. The 1981 action was barred by the statute of limitations which applies in this case.

### B. Time Limits on Enforcement

The statute holding personal representatives personally liable for the payment of inheritance taxes has undergone four amendments since its passage in 1931. The original statute read as follows:

Every such tax imposed by this act shall be, and remain, a lien upon the property transferred until paid, and the person to whom the property is so transferred and the administrators, executors, or trustees of every estate so transferred, shall be personally liable for the payment of such tax.

1931 Ind. Acts ch. 75 § 30.

In 1937, the legislature added a proviso precluding collection of inheritance taxes unless a proceeding to determine the amount of tax was initiated within ten years of the decedent's death. The proviso said

. . . Provided, That if no proceeding is taken to determine the inheritance tax on the property of any deceased person within ten years after his death, it shall be conclusively presumed that no inheritance tax is due and all property of decedent shall be free and clear therefrom.

1937 Ind. Acts ch. 159 § 1.

The Indiana legislature then amended the proviso in 1951 to preclude collection unless a proceeding to determine the amount of tax was initiated within five years of the decedent's death, cf. IC 6-4-1-29, 1957 Ind. Acts ch. 204, § 1, Ind.Code Ann. § 7-2430 (Burns 1972 supp.).

The current version of the personal liability statute was enacted in 1976. It essentially restates and recodifies the 1957 stat-

---

**3.** The record reveals Rideout was also the local prosecuting attorney during most of the time period here involved. However, we are not called upon to determine any potential issues which naturally flow from Rideout's dual roles in this matter, since the record is silent as to whether the county treasurer notified him, as prosecutor, of the delinquency. We note in passing, however, prosecuting attorneys who act as administrators of decedents' estates should carry out their duties in a manner calculated to avoid conflicts of interest regarding their official duties.

**4.** Neither does IC 6-8.1-3-13 support the Attorney General's 1972 action. This statute gives the Attorney General authority to prosecute civil actions to collect unpaid taxes. Inheritance taxes are excluded from the taxes listed in IC 6-8.1-1-1, to which the act applies. Through IC 6-8.1-1-6, that exclusion also applies. IC 6-8.1-3-13. Additionally, IC 6-8.1-3-13 was not enacted until 1980.

ute which was in force when the estate was opened in 1961. It reads

The inheritance tax imposed as a result of a decedent's death is a lien on the property transferred by him. Except as otherwise provided in IC 6–4.1–6–6(b), the inheritance tax accrues and the lien attaches at the time of the decedent's death. The lien terminates when the inheritance tax is paid or five (5) years after the date of the decedent's death, whichever occurs first. In addition to the lien, the transferee of the property and any personal representative or trustee who has possession of or control over the property are personally liable for the inheritance tax.

IC 6–4.1–8–1. Because no time limit for bringing an action is imposed by either IC 6–4.1–9–11 (prosecutor brings enforcement action), or IC 6–4.1–8–1 above, we must determine whether an action to enforce an administrator's personal liability may be instituted at any time; or whether such actions are subject to any statute of limitations.

■ Initially we note IC 6–4.1–9–11 requires the prosecutor to initiate "an action" to enforce payment of the tax. An "action" is

The legal and formal demand of one's right from another person or party made and insisted on in a court of justice....

An ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement ... of a right ....

It includes all the formal proceedings in a court of justice attendant upon the demand of a right made by one person of another in such court, including an adjudication upon the right and its enforcement or denial by the court.

BLACK'S LAW DICTIONARY, Revised Fourth Edition (1968), p. 49. Thus, an enforcement action is subject to IC 34–1–2–3, the residual statute of limitations, which reads

All actions not limited by any other statute shall be brought within ten (10) years unless the cause of that action arose before September 1, 1982, in which case the action must be brought within fifteen (15) years. In special cases, where a different limitation is prescribed by statute, the provisions of this section shall not apply.

■ In this case the obligation to pay inheritance tax, and thus the cause of action to enforce payment thereof, accrued at the time Mr. Dukes died in 1961, *cf.* IC 6–4.1–8–1. Hence, October 11, 1976, was the last day upon which the county prosecutor could have initiated proceedings to obtain an order for the estate to appear and show cause why the tax had not been paid.

The Attorney General's 1972 attempt to collect the tax did not toll the statute. The "Motion to Enforce Compliance with Court Order" he filed at that time was not authorized by statute. Thus, the limitations statute continued to run. In 1981 action was initiated 5 years too late.

Affirmed.

MILLER and YOUNG, JJ., concur.