Randall R. DAVIS, Plaintiff,

v.

GEO. S. OLIVE & CO., Defendant.

No. IP 88–1399–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 1, 1990.

Jon R. Pactor, Indianapolis, Ind., for plaintiff.

Phillip A. Terry, McHale, Cook & Welch, Indianapolis, Ind., for defendant.

MEMORANDUM ENTRY REGARDING GRANTING OF PARTIAL SUMMARY JUDGMENT WITH RESPECT TO THE APPLICABLE STATUTE OF LIMITATIONS AND DISCUSSION OF ISSUES TO BE ADDRESSED IN EVIDENTIARY HEARING

TINDER, District Judge.

Defendant, George S. Olive & Company (GSO), has moved for summary judgment against the plaintiff, Randall Davis (Davis). GSO bases its motion on one argument: the statute of limitations bars plaintiff's accountant malpractice claim. After considering the briefs submitted by both sides and the applicable law, I grant partial summary judgment, under Rule 56(d) of the Federal Rules of Civil Procedure, in favor of the defendant with respect to the limited issues of the applicable statute of limitations, and the event that triggers the running of that statute. Indiana Code § 34–1–2–2(1), which prescribes a two year statute of limitations, applies to this case, regardless of the theory of recovery that plaintiff may advance. This statute began to run upon the accrual of plaintiff's cause of action; in this case, the cause of action accrued for purposes of the statute of limitations on the first date that damage oc-

curred to the plaintiff. As to these issues and the facts that support them, I am entering an order which will be binding on the parties during the rest of this case.

Both parties should note that I am not granting summary judgment for the defendant with respect to the entire claim, but only on these two limited issues. Because I lack the facts necessary to decide today whether the statute of limitations has indeed run, I am ordering a hearing under Rule 56(d) so that those issues which are critical to making this determination can be further developed and argued. At the end of this memorandum I have set forth those issues which the parties should be prepared to address at the hearing. Further, the parties will be permitted to submit any additional information relevant to the resolution of these issues according to a timetable set out in the order accompanying this memorandum.

After the hearing has been held, I will decide whether there is no "genuine issue as to any material fact" and whether the defendant is "entitled to a judgment as a matter of law" on grounds that the statute of limitations has run, pursuant to Fed.R. Civ.P. 56(c). Even if I deem summary judgment to be unavailable, I shall nonetheless issue an order specifying those facts that exist "without substantial controversy," and shall direct such further proceedings in the action as are just, pursuant to Rule 56(d).

## BACKGROUND AND FINDINGS OF FACT

In April 1985, the plaintiff in this case, Randall Davis, employed William Wittgen, a certified public accountant with the Indianapolis accounting firm of George S. Olive & Company, to prepare his 1984 individual income tax returns. Wittgen completed the returns and mailed a copy to Davis, who lives in Arizona, on October 14, 1985. Neither party indicates when the 1984 returns were filed with the I.R.S.[1]

When it came time to file his 1985 income tax returns, Davis chose not to utilize GSO or Wittgen. Instead, he retained an Arizona certified public accountant. In order to gain some information needed to apply for an automatic filing extension, the Arizona C.P.A. and Davis telephoned Wittgen in April 1986. During that conversation, Davis expressed dissatisfaction over GSO's handling of his 1984 tax affairs. In November 1986, Davis was advised by his Arizona accountant that GSO had failed to take advantage of certain tax benefits in preparing Davis' tax forms for 1984. Davis' expression of dissatisfaction with GSO's services was repeated in a letter sent by Davis to Wittgen in January 1988. Wittgen responded in writing to Davis' letter on February 3, 1988. Neither party has presented to the court a copy of the actual letters received and sent by Wittgen. Davis filed suit in Marion County Superior Court in Indianapolis, Indiana on November 10, 1988. The defendant successfully petitioned for removal to federal court on diversity grounds.

## SUMMARY OF THE PARTIES' ARGUMENTS

Defendant's basis for summary judgment is relatively straight-forward. GSO argues that Davis' cause of action is governed by Ind.Code § 34–1–2–2(1), which provides a two year statute of limitations for injuries to personal property. GSO argues that this statute is an accrual statute and that the cause of action accrued on the date the damage occurred, not on the date the plaintiff actually discovered his injury. GSO suggests that the statute began running in this case on the date GSO mailed the 1984 tax returns to Davis—October 14, 1985. Because Davis filed his claim more than two years after this date, GSO argues that it should be barred.

Davis responds by disputing the applicability of Ind.Code § 34–1–2–2(1). The proper statute of limitations to apply is either

---

**1.** The parties do not indicate whether the alleged overpayment of tax was made to the federal, state or local government. My use of the term "I.R.S." is only a reflection of my assumption that the overpayment was made to the federal government. The issues addressed in this memorandum do not hinge on which governmental entity has received the overpayment.

the catch-all statute, Ind.Code § 34–1–2–3, which prescribes a ten year period, or the statute for claims based on accounts, Ind. Code § 34–1–2–1, which prescribes a six year period. Even if the two year statute of limitations should apply, Davis argues that when the statute began to run is a question of fact that cannot be decided on summary judgment and that the statute cannot begin to run until the plaintiff first discovered the injury, which did not occur in this case until sometime in November 1986.

## CHOICE OF LAW

Traditionally, if the parties do not dispute the appropriate choice of law rules, the court applies the substantive law of the forum. *National Ass'n of Sporting Goods Wholesalers, Inc. v. F.T.L. Marketing Corp.*, 779 F.2d 1281, 1284–85 (7th Cir. 1985). In this case, GSO argues that Davis' cause of action must conform to Indiana's statute of limitations; Davis does not contest this argument. Whenever both parties assume that Indiana state law is applicable, this court will not reject that assumption *sua sponte*. Thus, Indiana state substantive law controls this case.

## CONCLUSIONS OF LAW

This motion presents three distinct issues. First, what is the appropriate statute of limitations to apply? Second, given the appropriate statute, what event triggers the running of the statute? Third, when did the statute begin to run in this case? As already pointed out, based on the facts currently before me, I can decide only the first two issues. The third issue has

been discussed in some detail, however, so that the parties will be better able to focus on the relevant facts and law at the hearing to be held.

### 1. The Appropriate Statute of Limitations

■ Indiana has a variety of statutes of limitations. Some of these statutes run for only two years, others run for as long as twenty years. GSO argues that Indiana Code § 34–1–2–2(1) (Burns 1986) controls Davis' claim.[2] Davis counters by arguing that the catch-all statute of limitations should apply, Ind.Code § 34–1–2–3 (Burns 1986),[3] or that the statute of limitations applicable to suits on account should apply, Ind.Code § 34–1–2–1 (Burns 1986).[4]

Fortunately, the Indiana Supreme Court has provided a process by which a court can select the appropriate statute of limitations. In *Shideler v. Dwyer*, the Court adopted Judge Dillin's conclusion that "it is the nature or substance of the cause of action, rather than the form of the action, which determines the applicability of the statute of limitations." 275 Ind. 270, 417 N.E.2d 281, 285 (1981) (quoting *Koehring Co. v. National Automatic Tool Co.*, 257 F.Supp. 282, 292 (S.D.Ind.1966), *aff'd*, 385 F.2d 414 (7th Cir.1967)). The *Shideler* Court noted that under the modern rules of civil procedure, including Indiana's trial rules, the dominant trend in the law has been the recognition of the substance of pleadings over their form. *Id.* 417 N.E.2d at 286.

In *Shideler*, the Court used this process to determine the appropriate statute of

**2.** Indiana Code § 34–1–2–2(1) provides:
The following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards:
(1) For injuries to person or character, for injuries to personal property, and for a forfeiture of penalty given by statute, within two [2] years.

**3.** Indiana Code § 34–1–2–3 provides:
All actions not limited by any other statute shall be brought within ten [10] years unless the cause of that action arose before September 1, 1982, in which case the action must be brought within fifteen [15] years....

**4.** Indiana Code § 34–1–2–1 provides:
The following actions shall be commended within six [6] years after the cause of action has accrued, and not afterwards.
First. On accounts and contracts not in writing.
Second. For use, rents, and profits of real property.
Third. For injuries to property other than personal property, damages for any detention thereof, and for recovering possession of personal property.
Fourth. For relief against frauds.

limitations to be applied to an intended beneficiary's suit arising out of an attorney's alleged failure to properly draft a will. Although the plaintiff had attempted to evade a problem with the statutes of limitations through the use of artful pleading labels, the Supreme Court refused to be misled by such tactics. "With respect to the Complaint herein, the number and variety of Plaintiff's ... theories of recovery cannot disguise the obvious fact—apparent even to a layman—that this is a malpractice case, and hence is governed by the statute of limitations applicable to such actions." *Id.* at 286. The *Shideler* Court concluded that the attorney's alleged malpractice had resulted in the plaintiff's loss of a right to receive $500 a month for life. This right was found to be a chose in action, which falls within the broad definition of personal property. Because suits alleging damage to personal property are controlled by Ind.Code § 34–1–2–2(1), the *Shideler* Court ruled that the plaintiff's suit against the attorney had to be brought within that statute's two year time period. *Id.* at 288.

The Supreme Court reaffirmed *Shideler*'s ruling in *Whitehouse v. Quinn*, 477 N.E.2d 270 (Ind.1985). In that case, a man had been injured in an automobile accident which was caused by the combined negligence of several parties, including the State of Indiana, and the highway contractor who built the road on which the accident occurred. The man's lawyer advised him to settle with two of the parties for $140,000. In settling, the plaintiff executed a release form and covenant not to sue. The form released not only the settling parties, but also released from liability all possible defendants, including the State of Indiana and the contractor. The lawyer had failed to advise the plaintiff that the release was so broad in its sweep. When the man discovered that he had lost viable claims against these defendants, he sued his attorney for negligence and for

breach of the written contingent attorney fee contract.

The trial court in *Whitehouse* concluded that the two year limitation period of Ind. Code § 34–1–2–2(1) governed both the tort and contract counts of the plaintiff's complaint, and that both claims were barred under that statute. On appeal, the Indiana Court of Appeals agreed that the negligence count was properly governed by the two years limitation period, but held that the breach of contract claim should be governed by the 20 year limitation period for suits based on written contracts, Ind.Code § 34–1–2–2(6).[5]

The Indiana Supreme Court reversed the Court of Appeals' decision on the breach of contract claim. Consistent with the *Shideler* decision, the high court held that the applicable statute of limitations should be decided not by reference to the pleadings filed but by the essence of the claim. *Id.* at 272. Since the plaintiff's claim against the State of Indiana was a "personal property interest in the form of a tort lawsuit" arising out of personal injury, the proper limitations period was Ind.Code § 34–1–2–2(1) which governs claims for both personal injuries and injuries to personal property. *Id.* at 274.

What this pronouncement means is that a plaintiff or defendant cannot point to the phraseology of the complaint in order to gain a windfall in the application of the statute of limitations. *See, e.g., Luxurious Swimming Pools, Inc. v. Tepe,* 177 Ind. App. 384, 379 N.E.2d 992 (1978) (plaintiff who had alleged U.C.C. breach of warranty theories in his suit against contractor for improper construction of a swimming pool was not held to shorter 4 year statute of limitations for U.C.C. claims, but was allowed up to 10 years to sue on grounds that the substance of the cause of action was for damage to real property).

Under *Shideler* and *Whitehouse*, the determinative issue in this case is the characterization of Davis' claim against GSO.

**5.** Although Ind.Code § 34–1–2–2(6) normally provides a ten year period of limitations for such claims, the period is extended to 20 years for suits based on pre-September 1, 1982 written contracts. The plaintiff in *Whitehouse* signed the attorney contingent fee contract well before 1982.

This characterization cannot turn on any formalistic rules of pleading, but must instead look beyond the face of Davis' complaint to the underlying substantive claim. Because I view the substance of Davis' claim to be one involving damage to or loss of personal property arising out of accountant malpractice, the two year period set out in Ind.Code § 34–1–2–2(1) should control this case.

At root, Davis claims that GSO failed to properly complete his individual income tax returns.[6] As a result, Davis paid more taxes to the government for the taxable year 1984 than he was legally obligated to pay. Davis has been deprived of the use of his money for a period of time—perhaps forever—as a result of GSO's negligence. As the *Shideler* Court noted, Indiana courts have traditionally viewed "personal property" in its broadest sense, "which includes not only the thing itself but all the rights and interests of the owner." *Id.* at 287. Under *Shideler*'s holding, Davis' loss of money can best be characterized as injury to personal property.

Davis' attempts to avoid Indiana Code § 34–1–2–2(1) are unpersuasive. Davis prefers to focus not on the injury that GSO inflicted, but on the substantive claim that he now has against the government. Davis argues that the refund claim could be characterized as an account, and that suits on account are controlled by Ind.Code § 34–1–2–1. Without addressing the merits of Davis' characterization of his refund claim, I reject Davis' point of focus. As the *Whitehouse* Court noted, "the applicable statute of limitations should be ascertained by reference to the nature of the *harm* alleged." 477 N.E.2d at 273 (emphasis added). Davis' right to the tax refund was not *lost* as a result of GSO's actions, indeed it was *created* by GSO's actions. What GSO caused Davis to lose was the use of money that he once possessed.

Here, the substance of Davis' claim against GSO is for injury to personal property resulting from accountant malpractice. As a result, Ind.Code § 34–1–2–2(1) places a two year time limit on bringing suit.

Davis' other arguments to the contrary are also unpersuasive. He argues that his claim could fall under the ten year catch-all statute, Ind.Code § 34–1–2–3, based on the Indiana Court of Appeal's decision in *Indiana Department of State Revenue v. Rideout*, 453 N.E.2d 1179 (Ind.Ct.App. 1983). That case is not controlling. *Rideout* focused on the time period in which the state must sue an administrator of an estate for payment of inheritance taxes. The *Rideout* court noted that the statute that authorized the state to sue the administrator contained no statute of limitations. As a result, if the action was to be governed by any statute of limitations, only the catchall statute of limitations could apply. *Id.* at 1182.

In addition, the text of the catch-all statute suggests that it operates as a safety net for defendants who see the claims brought against them slipping through the other statutes of limitations. "All actions *not limited by any other statute* shall be brought within ten [10] years...." Ind. Code § 34–1–2–3 (Burns 1986). As a safety net, the statute should be utilized only after all other periods of limitation have been discarded. Because the two year period of limitations applies, there is no need to resort to the catch-all statute.

### 2. What Event Triggers the Running of the Statute

■ The text of Ind.Code § 34–1–2–2 states that "the following actions shall be commenced within the periods herein prescribed after the cause of action has *accrued*, and not afterwards." (emphasis added). Indiana courts have read the word "accrued" in this statute to mean either the point at which damage to the plaintiff oc-

---

**6.** It should be noted that this entry addresses only GSO's second defense, the running of the statute of limitations. GSO's first defense is a denial of any negligence. The court has made no findings of fact or conclusions of law regarding the issue of negligence, and none should be inferred from this memorandum. The issue of negligence will be tried if and only if the plaintiff's claim is not barred by the statute of limitations. Any references in this entry to wrongdoing by GSO are made by construing all inferences in favor of plaintiff's claim, and should not be construed as findings or conclusions that GSO acted in a negligent manner.

curred, *Craven v. Craven,* 181 Ind. 553, 103 N.E. 333 (1913); *Shideler v. Dwyer,* 275 Ind. 270, 417 N.E.2d 281 (1981); *Whitehouse v. Quinn,* 477 N.E.2d 270 (Ind.1985); and *Toro Co. v. Krouse, Kern & Co.,* 644 F.Supp. 986 (N.D.Ind.1986), *aff'd,* 827 F.2d 155 (7th Cir.1987), or the point at which such damage is ascertainable or by due diligence could be ascertained, *Burks v. Rushmore,* 534 N.E.2d 1101 (Ind.1989); and *Barnes v. A.H. Robins Co.,* 476 N.E.2d 84 (Ind.1985).

After reading each of these opinions, I am convinced that the statute began to run in this case upon the occurrence of damage to Davis, and not upon discovery. All three of the cases that adopted the occurrence rule were malpractice cases; both *Shideler* and *Whitehouse* involved attorney malpractice, and *Toro* involved accountant malpractice. Those cases reaching the opposite conclusion are quite dissimilar to this case. *Barnes* involved delayed personal injury resulting from the use of an intra-uterine contraceptive device, and *Burks* involved a defamation action.

Davis' attempt to limit and distinguish *Shideler,* although well argued, is not persuasive. Davis argues that dicta in the *Shideler* opinion regarding the discovery rule demonstrates the limited nature of the *Shideler* case. Specifically, Davis points to the following language in *Shideler:*

> There is authority supporting the proposition that statutes of limitation attach when there has been notice of an invasion of the legal right of the plaintiff or he has been put on notice of his right to a cause of action. There may be special merit to that viewpoint where, as in *Neel v. Magana,* [6 Cal.3d 176, 98 Cal.Rptr. 837], 491 P.2d 421 (Cal.1971), the plaintiff was the client or the patient, but we do not have that problem.
>
> We also note that in many cases where the discovery rule has been applied or alluded to, the misconduct was of a continuing nature or concealed, which also was the situation in *Neel v. Magana, supra.*

417 N.E.2d at 291 (citations omitted).

This language in the *Shideler* opinion is little more than dicta recognizing the dis-covery rule. Arguably, this language does hint that the existence of a contractual relationship between the plaintiff and the malpracticing professional could single-handedly justify the use of the discovery rule. However, when given the opportunity to expressly adopt this dicta in the case of *Whitehouse v. Quinn,* the Supreme Court chose instead to reject it. 477 N.E.2d 270 (Ind.1985). In *Whitehouse,* the Indiana Supreme Court incorporated into its own opinion parts of the Court of Appeals' opinion. 477 N.E.2d at 272 (incorporating 443 N.E.2d 332 (Ind.Ct.App.1982)). The Court of Appeals' opinion clearly rejected Davis' reading of the dicta in *Shideler.* The court of appeals concluded that the running of the statute of limitations would not be pushed forward to the point of discovery simply because the plaintiff was the client of the malpracticing attorney. Only if the plaintiff could show affirmative or active misconduct on the part of the defendant which concealed the malpractice action would the court toll the statute until the plaintiff discovered the wrong. Absent such active concealment, the statute could be tolled only during the life of the fiduciary relationship. And even then, the statute would be tolled only if the plaintiff could demonstrate he was, in fact, ignorant of the malpractice, and that he could not, through due diligence have discovered the malpractice. 443 N.E.2d 332, 339 (Ind.Ct.App.1982) (emphasis in original). Davis makes no claim in his complaint or brief to the court that GSO actively concealed the alleged malpractice from him either during the fiduciary relationship or after it was terminated. *Whitehouse* clearly demonstrates that the dicta in *Shideler* cannot be read to mean that the mere existence of a fiduciary relationship, without a showing of active concealment, is enough to justify the use of the discovery rule *after* the relationship has been terminated.

The Northern District of Indiana also used the occurrence rule to decide an accountant malpractice claim in *Toro Co. v. Krouse, Kern & Co.,* 644 F.Supp. at 997.

Although the *Toro* decision is not binding on this court, it does support the use of the occurrence rule in this case.

### 3. When Did the Statute Begin to Run in This Case

■ Having decided that Ind.Code § 34–1–2–2(1) is the applicable statute of limitation, that this statute is an accrual statute, and that the date of accrual is the date that Davis was damaged by GSO's alleged malpractice, the only remaining issue for the court to decide is when damage first occurred. There are several possible dates, including: the date GSO completed its work on Davis' 1984 income tax returns, the date Davis received a copy of the returns, the date the I.R.S. received Davis' alleged overpayment, the date the I.R.S. received a copy of the returns, or the date Davis paid GSO for its work on the returns.

This first date can be easily rejected. Davis suffered no damage as a result of GSO's completion of the tax returns since the information contained in the returns had not been conveyed to anyone. *Cf. Toro Co. v. Krouse, Kern & Co.*, 644 F.Supp. at 997 (rejecting date of negligent completion of credit report as date of accrual of damage to plaintiff).

Although the *Toro* case adopted the date the plaintiff received the negligently prepared credit report as the date damages occurred, I do not view this as the appropriate date on which to start the statute of limitations either. *Id.* Mere receipt, without some sort of reliance or detriment, poses no damage to the plaintiff. Moreover, the *Toro* court's adoption of this date was dictum, since the court had already decided to grant summary judgment for the defendant on other grounds. *Id.* at 996 ("While it is unnecessary to determine the applicability of the statute of limitations ..., it will nonetheless be considered briefly.").

I also reject the date the I.R.S. received Davis' overpayment as the correct date on which to start the running of the statute. Because the I.R.S. automatically withholds individual income tax from individuals, a taxpayer might actually make an overpayment to the I.R.S. long before the income tax return is ever prepared by the accountant. To start the statute with the payment of the tax could threaten to bar plaintiffs from court long before the accountant had ever begun work. In addition, the plaintiff is suing the accountant for negligently preparing the tax return. The running of the statute should be tied to some action associated with the completion of the return, and not to the tangential act of paying the tax.

While the statute should be tied to the completion of the return, it also should not begin to run until the plaintiff has been injured in some way by the actions of the defendant. In this case, Davis was not injured until one of two events occurred—when Davis made payment to GSO for its work in preparing the return, or when Davis filed the negligently-prepared return with the I.R.S. As soon as one of these events occurred, Davis suffered some injury as a result of GSO's alleged negligence, and the cause of action accrued at that moment.[7]

My conclusion that the cause of action accrued with the filing of the tax return is fully supported by the Indiana Supreme Court's decisions in *Shideler* and *Whitehouse*. In *Shideler*, an attorney was sued by a disappointed beneficiary for malpractice based on the attorney's alleged negligence in drafting a will that was later deemed invalid. The Court applied Ind. Code § 34–1–2–2(1) to the plaintiff's claim and concluded that the damage to the plaintiff first occurred upon the death of the testator. The *Shideler* Court reasoned: "When did damage to Plaintiff result from Defendant's alleged negligence? Not when the Will was drafted or executed,

---

7. Of course, the statute can be tolled during the life of the fiduciary relationship, as was discussed in both *Guy v. Schuldt*, 236 Ind. 101, 138 N.E.2d 891, 895 (1956), and *Whitehouse v. Quinn*, 443 N.E.2d at 339 (Ind.Ct.App.1982), notwithstanding the occurrence of one or both of these events. Once the relationship is terminated, however, the statute will begin to run, assuming that one of these two events has occurred.

because it had to await the death of [the testator] before it could have any dispositive effect. But at his death, the instrument was operative...." 417 N.E.2d at 290. By this logic, the key to the accrual of damage to the plaintiff resulting from the drafting of a legal document, whether it be a will or an official tax return, is the date on which the document takes on legal, and irrevocable, significance. In the case of a will, the death of the testator gives legal significance to the will. In the case of an income tax return, the date of filing is the day the document legally binds the plaintiff to tender to the government the tax due according to the return. Before the return is actually filed, the plaintiff is free to destroy the return, recalculate his tax, and submit a different return. While the filing of a tax return is certainly less irrevocable than the death of a testator, it is nonetheless the most significant legal event associated with the payment of taxes. For example, the taxpayer, by signing the return, attests to its truthfulness under penalty of perjury. As a result, its filing should serve as the blast from the starter's gun that signals the start of the plaintiff's race to the courthouse against the statute of limitations.

Likewise, in *Whitehouse,* the Indiana Supreme Court agreed with the trial court's conclusion that the plaintiff was first damaged upon signing the release form that released all potential defendants from liability resulting from the automobile accident. 477 N.E.2d at 272. Once the release was signed, it took on a legal significance that justified the beginning of the two year limitations period.

In order for the statute to run, only one of these two events need occur. Either payment for GSO's services or the filing of the tax return will be sufficient. If Davis made payment to GSO and never filed the return, his cause of action would still have accrued beginning with the date of payment. If Davis filed the return but failed to pay GSO for its services, the cause of action would likewise have accrued beginning with the date of filing.

Unfortunately, the parties do not indicate when either of these events occurred. As a result, I am able to grant summary judgment for the defendant only with respect to the conclusion that Ind.Code § 34–1–2–2(1) controls this case. In addition, that statute began to run upon the accrual of plaintiff's claim. Plaintiff's claim accrued upon the first occurrence of some damage, which occurred on either the day the return was filed or the day Davis paid GSO for its services in preparing the return, whichever occurred first.

In order to determine whether GSO is entitled to full summary judgment on grounds that the statute has run, a hearing will be held at which the parties are to address the following issues:

1. When Davis' 1984 income tax return was received by the I.R.S. or other appropriate governmental agency.

2. When Davis tendered payment to GSO for GSO's work in preparing Davis' 1984 income tax return. If payment was made in installments, the parties should present all the dates on which partial payment was made and should present evidence to prove when final payment was tendered.

3. Whether the statute was tolled during the life of the fiduciary relationship. Tolling of the statute will depend on whether the factors discussed in *Guy v. Schuldt,* 236 Ind. 101, 138 N.E.2d 891 (1956) and *Whitehouse v. Quinn,* 443 N.E.2d 332, 339 (Ind.Ct.App.1982) (incorporated into the Supreme Court's decision at 477 N.E.2d at 272) can be shown by the plaintiff, who has the burden of avoiding the statute of limitations, *see Keystone Distrib. Park v. Kennerk, Dumas, Burke, Backs, Long, and Salin,* 461 N.E.2d 749, 751 (Ind.Ct.App. 1984).

4. When Davis' fiduciary relationship with GSO was terminated. Parties should be prepared to discuss the facts in this case that point to termination or survival of the relationship and should be able to relate these facts to the law regarding fiduciary relationships.

At the hearing, I will look first to GSO to bring forward evidence regarding the date

it received payment from Davis and the date Davis' tax return was filed with the I.R.S. If GSO can establish either (or both) of these dates and can show that Davis' claim was filed more than two years after the earlier of these dates, then I will look to Davis to bring forward evidence regarding the tolling of the statute. As already discussed, the statute may be tolled during the life of the fiduciary relationship or by affirmative concealment by the defendant. If Davis cannot avoid the running of the statute by presenting affirmative evidence of this nature, then summary judgment will be entered in favor of the defendant pursuant to Rule 56(c). If the entry of complete summary judgment is not possible either because a genuine issue of material fact still exists or because the defendant is not entitled to judgment as a matter of law, then I will specify those material facts, if any, that exist without substantial controversy, and "upon the trial of the action the facts so specified shall be deemed established." Fed.R.Civ.P. 56(d).

### ORDER OF PARTIAL SUMMARY JUDGMENT AND SETTING HEARING

Defendant, George S. Olive & Company (GSO), has moved for summary judgment against the plaintiff, Randall Davis (Davis). As fully discussed in the memorandum entry accompanying this order, I will enter partial summary judgment in favor of the defendant with respect to certain issues raised by GSO's defense that the statute of limitations has run. In particular, I have concluded that Indiana Code § 34-1-2-2(1), which prescribes a two year statute of limitations, is the controlling statute of limitations for Davis' claim. In addition, I have concluded that this statute began to run upon the accrual of damages to Davis, and that damages must be deemed to have occurred upon the earlier happening of one of two events—payment to GSO for its services or the filing of Davis' 1984 tax returns with the government.

Because I cannot determine whether this statute bars plaintiff's claim without first determining certain facts, a hearing, pursuant to Rule 56(d), will be held on June 7, 1990 at 9:30 A.M. in Room 283, United States Courthouse, 46 East Ohio Street, Indianapolis, Indiana. At this hearing, by examining the pleadings and the evidence before the court and by interrogating counsel, the court shall ascertain, if practicable, what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. At the hearing, counsel should address whether or not full summary judgment for the defendant should be granted on the basis of those issues outlined at the conclusion of the accompanying memorandum entry, and whether any facts brought forward at the hearing should be deemed established at trial.

Counsel for both parties should be prepared to refer to depositions and exhibits with particularity, specifically addressing the court's attention to the relevant portions of such documents. Further, the defendant is permitted to file any additional information and authority relevant to the resolution of this matter in compliance with Rule 56 on or before April 2, 1990. The plaintiff will have until April 23, 1990 to respond. The defendant may reply by April 30, 1990.

ALL OF WHICH IS ORDERED.