975 F.2d 1305
 LIFT-A-LOFT CORPORATION and Lift-A-Loft Manufacturing,
Incorporated, Plaintiffs-Appellants,
v.
RODES-ROPER-LOVE INSURANCE AGENCY, INCORPORATED,
Defendant-Appellee/Cross-Appellant,
v.
FOGELMAN-OSEMAN INSURANCE AGENCY, INCORPORATED, a Tennessee
corporation, and Stephen L. Oseman, Third Party
Defendants/Cross-Appellees.
 Nos. 91-3287, 91-3392.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 26, 1992.
Decided Sept. 22, 1992.
Rehearing and Rehearing In Banc
Denied Nov. 9, 1992.
 
 Frank E. Gilkison (argued), Marianne L. Vorhees, Robert C. Beasley, Beasley, Gilkison, Retherford, Buckles & Clark, Muncie, Ind., for plaintiffs-appellants.
 David R. Hamer, William C. Potter, II, Dann, Pecar, Newman, Talesnick & Kleiman, Indianapolis, Ind., James H. Fallace (argued), Melbourne, Fla., for defendant-appellant Rodes-Roper-Love Ins. Agency, Inc.
 Michael E. Brown, Rodney L. Scott (argued), Kightlinger & Gray, Indianapolis, Ind., for defendants-appellees Fogelman-Oseman Ins. Agency, Inc. and Stephen L. Oseman.
 Before BAUER, Chief Judge, COFFEY, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.
 HARLINGTON WOOD, Jr., Senior Circuit Judge.
 
 
 1
 Lift-A-Loft Corporation and Lift-A-Loft Manufacturing, Incorporated appeal the district court's entry of summary judgment against them on all counts of their complaint against Rodes-Roper-Love Insurance Agency, Incorporated. Additionally, Rodes-Roper-Love asserts a cross-appeal against Fogelman-Oseman Insurance Agency, Incorporated and Stephen Oseman, requesting that this court reverse the district court's entry of summary judgment against them on their indemnification claim against the third-party defendants. For the following reasons we affirm the disposition of this case with regard to the Appellants' negligence and breach of contract counts against the Appellees. However, we reverse the district court's summary judgment disposition of the Appellants' fraud claim and remand that claim for further proceedings. Because the Appellant's fraud claim still stands, we reverse the district court's decision regarding the third party defendant's liability to the Appellee.BACKGROUND FACTS
 
 
 2
 Lift-A-Loft Corporation, an Indiana Corporation, and Lift-A-Loft Manufacturing, Incorporated, an Illinois corporation, are in the business of manufacturing industrial commercial lifting equipment and work platforms. Rodes-Roper-Love Insurance Agency, Incorporated ("RRL") is a Florida corporation. Steve Oseman was, at all times relevant to this case, Executive Vice-President of RRL. In February 1985 Lift-A-Loft Corporation and Lift-A-Loft Manufacturing, Incorporated (collectively referred to as "Lift-A-Loft") were insured under a general liability policy issued by Reliance Insurance Company. The policy was to expire the last day in February, and Reliance was unwilling to renew it, so Lift-A-Loft sought replacement general liability insurance coverage. Oseman, Lift-A-Loft's insurance agent, solicited quotations from various companies. Oseman received a quotation from American Interinsurance Group ("American") for $1,000,000 dollars of products liability coverage for a premium ranging from $199,260 to $292,498. Before delivering this quote to Lift-A-Loft, Oseman spoke with another RRL employee, David Tooley, who was RRL's chief underwriter. Tooley offered to contact Allied Fidelity Insurance Company ("Allied"). RRL was a Managing General Agent of Allied, and this status gave RRL special authority to underwrite and bind certain risks. Oseman testified that Tooley told him Allied had a B rating in the Best's Key Rating Guide to insurers. Tooley then contacted Allied, and Allied agreed to provide a policy for Lift-A-Loft for $500,000.
 
 
 3
 After receiving the quote from Allied, Oseman testified he learned that Allied was going to be nonrated in the upcoming edition of Best's. He also testified that Tooley told him the reason for the nonrating was that Allied requested not to be rated because of a dispute as to the interpretation of Allied's financial statements. Tooley, however, denied discussing Allied's Best's rating with Oseman either before contacting Allied to get the quote or after Tooley obtained the quote.
 
 
 4
 Oseman then prepared a written proposal for Lift-A-Loft's general liability coverage from March 1, 1985, to March 1, 1986, and he presented it to Francis Clarke, Lift-A-Loft's Vice-President at that time. Clarke testified Oseman showed him only the premium summary page of the proposal which provided general liability coverage for a premium of $152,000. This number was in fact the quoted premium for the Allied policy. Clarke testified that Oseman also told him another company would provide coverage for $100,000 above the Allied quote, but Oseman did not tell Clarke the other company's name (American), nor did Oseman tell Clarke that the Allied policy provided only $500,000 of coverage. Clarke believed both policies were for $1,000,000. Clarke testified further that Oseman told him Allied was a good company and that Oseman did not tell him that Allied was to be nonrated in the upcoming issue of Best's Key Rating Guide to Insurers.
 
 
 5
 There was additional testimony by Ralph Dennis, Lift-A-Loft's Chairman and Chief Executive Officer, that Oseman discussed the Allied quote and a quote from another company (American) in a meeting with Dennis, Clarke and Lift-A-Loft President, William Barefoot. Dennis stated that Oseman never told him that the quote from the other company was for $1,000,000 coverage as opposed to Allied's quote for $500,000. Dennis also stated that Oseman told the group that the two insurance companies were of comparable standing and that Allied was a good company. Dennis also stated that neither Oseman nor RRL ever mentioned to Lift-A-Loft the Best rating of either Allied or American.
 
 
 6
 Oseman's testimony differs somewhat from the Lift-A-Loft representatives'. Oseman stated he went over the entire written insurance proposal with Clarke, not just the premium summary page. Oseman also stated he informed Clarke of the American quote and the Allied quote and their respective limits, $1,000,000 and $500,000. Oseman also testified he told Clarke he was unfamiliar with Allied and that Allied was going to be nonrated by Best, but Clarke responded he was familiar with the company and there was no further conversation on that point.
 
 
 7
 Lift-A-Loft decided to take the Allied policy, and on July 17, 1985, Oseman delivered it to Lift-A-Loft. The policy provided coverage until March 1, 1986.
 
 
 8
 On March 6, 1986, the Marion County Circuit Court of Indianapolis, Indiana, entered an order placing Allied in rehabilitation. Lift-A-Loft learned of this shortly after the order was entered. In July 1986, about three months after the policy ended, the Marion County Circuit Court entered an order of liquidation in Allied's case. At this point, Lift-A-Loft no longer had any general liability insurance coverage. And prior to the policy's end on March 1, 1986, several claims arose under the policy. The briefs in this case discuss five of them. There was testimony that guaranty funds handled three of these five claims that arose under the Allied policy. Because the claims that arose under the policy's coverage were referred to various guaranty funds for defense, Lift-A-Loft was not fully aware of the extent of its damage.
 
 
 9
 Lift-A-Loft received notice of the latest claim on November 6, 1986. That claim, the Doman claim, was filed in Illinois state court. At all times relevant to this case, Allied was not admitted to do business in Illinois, but Lift-A-Loft was not aware of this fact. Lift-A-Loft was informed that Allied was not admitted to do business in Illinois via a letter from the Indiana Insurance Guaranty Association dated January 21, 1987. The letter states that since Lift-A-Loft Manufacturing, Incorporated is an Illinois corporation, the Doman claim was not a "covered claim" as defined within Indiana Guaranty Association law. The letter further states that the Illinois Guaranty Association was not handling any of the Allied insolvency cases because Allied was not admitted to do business in Illinois. The letter finally states that the Indiana Insurance Guaranty Association was closing its file on the Doman claim.
 
 
 10
 Lift-A-Loft continued to correspond over the next two years with the Indiana Guaranty Insurance Association regarding the Doman claim. According to Ralph Dennis's affidavit, Lift-A-Loft first incurred a loss and expense as a result of not having any general liability insurance for the period from March 1, 1985, to March 1, 1986, when it paid an attorney to defend a claim which occurred during the covered period. The date of this payment was May 28, 1987. The record does not reveal whether the claim was the Doman claim.
 
 
 11
 On May 1, 1987, Lift-A-Loft filed a four-count complaint in federal district court against RRL based in diversity. Count I alleges that RRL intentionally or recklessly made certain misrepresentations to Lift-A-Loft that induced Lift-A-Loft to purchase the Allied policy; Count II alleges that RRL breached its contract with Lift-A-Loft to obtain liability insurance for Lift-A-Loft with responsible insurers; Count III alleges RRL negligently placed Lift-A-Loft's insurance with Allied; and Count IV requests the court to determine what RRL's obligations would be for additional claims within the Allied policy's coverage that may be asserted in the future.
 
 
 12
 RRL filed an answer to the complaint on August 25, 1987, and RRL later moved to amend its answer to assert a third-party complaint against Fogelman-Oseman Insurance Agency, Inc. and Steve Oseman (collectively "Oseman") for indemnification. The district court allowed RRL to amend its answer on October 22, 1990. On February 21, 1991, RRL again moved to amend its answer to include the affirmative defense that Indiana's statute of limitations barred Lift-A-Loft's action. The district court granted this motion on April 8, 1991. RRL then filed on June 13, 1991, a motion for summary judgment on the basis that Lift-A-Loft's action was barred by the statute of limitations applicable under Indiana law. The court granted RRL's motion on September 19, 1991. The court additionally granted Oseman's summary judgment motion regarding its obligation to indemnify RRL in favor of Oseman after finding RRL was not liable to Lift-A-Loft.
 
 
 13
 Lift-A-Loft filed its Notice of Appeal and Jurisdictional Statement on October 2, 1991. RRL filed its Notice of Cross-Appeal on October 15, 1991.ANALYSIS
 
 
 14
 There are three issues. The first is whether the district court applied the correct statute of limitations to Lift-A-Loft's action. The district court applied a two-year statute of limitations to all three counts of Lift-A-Loft's complaint. Lift-A-Loft admits the two-year limitations period was appropriately applied to its negligence count, but Lift-A-Loft argues the district court should have applied a longer limitations period to its fraud and contract counts. The second issue is whether the district court correctly determined that Lift-A-Loft's claims accrued no later than January 23, 1987, which is the date Lift-A-Loft received a letter from the Indiana Insurance Guaranty Association informing Lift-A-Loft that the Association would not cover the Doman claim and neither would the Illinois Guaranty Association. Lift-A-Loft argues that its claims did not accrue until it had to pay an attorney to defend a case which arose under the Allied policy, and the date it first incurred such an expense was May 28, 1987. The third issue concerns RRL's cross-appeal. RRL argues that if we should reverse the district court's summary judgment decision, we should also reverse its decision regarding whether Oseman is liable to RRL for indemnification. The district court granted Oseman's summary judgment motion against RRL regarding indemnification because it granted RRL's motion regarding its liability to Lift-A-Loft in RRL's favor.
 
 
 15
 We find the district court applied the correct statute of limitations under Indiana law to Lift-A-Loft's negligence and contract counts in this case. We also find that the district court correctly decided that Lift-A-Loft's claim accrued no later than January 23, 1987. Thus, we find that the district court correctly granted summary judgment in favor of RRL on Lift-A-Loft's negligence and contract claims. However, we think summary judgment was inappropriately granted on Lift-A-Loft's fraud claim, and we reverse and remand that count for further consideration. Because we are reversing one part of the district court's decision regarding RRL's liability to Lift-A-Loft, we are also reversing the district court's summary judgment motion regarding indemnification between RRL and Oseman.
 
 
 16
 We review the district court's decision on a summary judgment motion de novo. We will affirm the district court's decision if all the materials in the record indicate there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law.
 
 
 17
 The district court decided that the statute of limitations found in Ind.Code § 34-1-2-2(1) applied to all of the counts in Lift-A-Loft's complaint. Ind.Code § 34-1-2-2(1) provides in relevant part:
 
 
 18
 The following actions shall be commenced within the period herein prescribed after the cause of action has accrued, and not afterwards:
 
 
 19
 (1) For injuries to ... personal property ... within two (2) years.
 
 
 20
 Lift-A-Loft agrees that the statute of limitations quoted above applied to its negligence count; however, Lift-A-Loft believes that the court should have applied Ind.Code § 34-1-2-1 to its fraud count and its contract count. Ind.Code § 34-1-2-1 provides in relevant part:
 
 
 21
 The following actions shall be commenced within six (6) years after the cause of action has accrued, and not afterwards.
 
 
 22
 First. On accounts and contracts not in writing.
 
 
 23
 ....
 
 
 24
 Fourth. For relief against frauds.
 
 
 25
 The district court believed that even though Lift-A-Loft stated claims in contract and fraud as well as negligence, the substance of its action was one for malpractice and its action was therefore controlled by the two-year statute of limitations in Ind.Code § 34-1-2-2(1). We agree.
 
 
 26
 In Shideler v. Dwyer, 275 Ind. 270, 417 N.E.2d 281, 285 (1981), the Indiana Supreme Court stated, "It is the nature or substance of the cause of action, rather than the form of the action which determines the applicability of the statute of limitations." Shideler concerned a suit arising out of an attorney's alleged failure to properly draft a will. The plaintiff in Shideler sued the attorney under various theories of recovery, but the Indiana Supreme Court held that the case was a malpractice case and the two-year statute of limitations applied. The holding of Shideler was applied to a more recent Indiana case, Butler v. Williams, 527 N.E.2d 231 (Ind.App.Ct.1988). In Butler the court applied the two-year statute of limitations to a claim against an insurance agent for the agent's failure to provide the appellees' establishment with dram shop coverage. Although the appellees in Butler alleged the insurance agent breached a contract with the appellees, the court stated that the appellees had failed to supply the court with any details about the nature of the contract they claimed was breached by the insurance agent. The Butler court further concluded that because the nature of the case was negligence in failing to obtain a particular type of insurance coverage, the two-year statute of limitations applied. The Shideler and Butler cases instruct us that courts in Indiana will not apply the six-year limitations period to a count in a complaint simply because the count is denominated a count for breach of contract or fraud. See Davis v. Geo. S. Olive & Co., 731 F.Supp. 1380, 1383 (S.D.Ind.1990) ("a plaintiff or defendant cannot point to the phraseology of the complaint in order to gain a windfall in the application of the statute of limitations"). However, Lift-A-Loft argues this case is different because this case is not based on mere allegations of breach of contract and fraud; rather, Lift-A-Loft maintains its fraud and breach of contract counts are based on substantial facts in the record.
 
 
 27
 Indiana courts have fortunately provided us with further guidance on this issue. In Whitehouse v. Quinn, 477 N.E.2d 270 (Ind.1985), the Indiana Supreme Court stated, "The applicable statute of limitations should be ascertained by the nature of the harm alleged." 477 N.E.2d at 273 (emphasis added). The Whitehouse court pointed out that the attorney's conduct in the case, whether a breach of common law duty or a breach of contractual duty, resulted in an injury to Whitehouse's personal property interest. The court added, "The existence of a written fee contract does not change the fact that Whitehouse's claim is for damage to personal property." Whitehouse, 477 N.E.2d at 274. The same is true in the case before us. RRL argues in its brief that although Lift-A-Loft claims to have substantiated its fraud and breach of contract counts with substantial facts, a review of the record reveals that the allegations are vague at best and simply restate Lift-A-Loft's claim for negligence. Moreover, RRL says, Lift-A-Loft's contention in all counts of its complaint is that Oseman should have persuaded Lift-A-Loft to purchase the American policy instead of the Allied policy--a malpractice claim. RRL points out that the injury to Lift-A-Loft's interest alleged in all counts of its complaint is the same, and RRL maintains the harm analysis set out in Whitehouse dictates that Lift-A-Loft's claim should be governed by the two-year limitations period. We believe RRL's contentions, as far as the negligence and tort counts are concerned, are supported by Indiana case law. In addition to the Whitehouse case, there is the Butler case in which the court held that the two-year statute of limitations applied when an insurance agent negligently failed to procure dram shop insurance even though the plaintiff in that case alleged breach of contract; and there is the Davis case in which a federal district court held that the two-year statute of limitations applied in a case against an accountant based on negligent preparation of a tax return despite that the plaintiff there sought to characterize his claim as an account or a contract to which Indiana's six-year statute of limitations would be applied. We believe the rule established in these cases should be applied to this case. The two-year statute of limitations should therefore be applied to the negligence and tort counts of Lift-A-Loft's complaint, which essentially state a cause of action for malpractice.
 
 
 28
 Our conclusion regarding the applicability of Indiana's two-year statute of limitations to Lift-A-Loft's fraud count is a little different. The district court denied RRL's motion to dismiss Lift-A-Loft's fraud count for failure to state the circumstances constituting fraud with sufficient particularity on August 15, 1989--early on in the proceedings of this case. Lift-A-Loft argues that the district court's later ruling on summary judgment finding Lift-A-Loft's action essentially for malpractice directly conflicts with its prior ruling denying RRL's motion to dismiss. Lift-A-Loft's argument ignores that whether a pleading states a cause of action under the liberal notice pleading requirements of the Federal Rules of Civil Procedure is entirely different from the determination of the substance of the cause of action for statute of limitations purposes. It is the latter inquiry which controls our decision here. Lift-A-Loft does have a point, however. It would be error for the district court to apply Indiana's two-year statute of limitations applicable to a malpractice action to a cause of action for fraud instead of a six-year statute of limitations applicable to fraud actions when the record in the case adequately supports a cause of action for fraud. The district court in this case did not address directly the substance of Lift-A-Loft's fraud claim. The court concluded that all counts of Lift-A-Loft's complaint, including the fraud count, simply stated a cause of action for malpractice. Failure to disclose material facts by one who has a position of trust and confidence or otherwise has a duty to disclose constitutes fraud. See Thompson v. Best, 478 N.E.2d 79 (Ind.App.Ct.1985). We think it is inappropriate to interpret Shideler to stand for the proposition that Indiana's two-year statute of limitations should apply to a case alleging negligence, breach of contract and fraud when there is evidence in the record creating a genuine issue of material fact regarding fraud. Because it seems that the district court applied the statute of limitations for malpractice cases without addressing whether there was a genuine issue of material fact regarding Lift-A-Loft's fraud count and in view of the fact that the statute of limitations for fraud is six years according to Ind.Code § 34-1-2-2, we think it is necessary to reverse the district court's decision regarding Lift-A-Loft's fraud count and remand for further proceedings.
 
 
 29
 The second issue raised in this case is whether the district court correctly determined that Lift-A-Loft's cause of action accrued prior to May 1, 1987. If the district court was correct that Lift-A-Loft's cause of action accrued no later than January 23, 1987, then Lift-A-Loft filed its claims in negligence and contract, which we have already found are both governed by the two-year statute of limitations applicable to malpractice suits, too late as Lift-A-Loft filed its complaint on May 1, 1989.
 
 
 30
 The Shideler and Butler cases are again applicable. In Shideler the Indiana Supreme Court stated, "For a wrongful act to give rise to a cause of action and thus to commence the running of the statute of limitations, it is not necessary that the extent of damage be known or ascertained but only that damage has occurred." 417 N.E.2d at 289. In Butler the court applied this rule and found that the latest date on which the cause of action against the insurer and the insurance company could have accrued was the date the insured was made aware that its insurance policy did not cover the claimed alcohol-related accident. See Butler, 527 N.E.2d at 234. The district court in this case found that Lift-A-Loft learned of Allied's rehabilitation in March of 1986 and Allied's pending liquidation in July of 1986. The district court further found that Lift-A-Loft became aware that Allied was not licensed to do business in Illinois on January 23, 1987, when the Indiana Insurance Guaranty Association informed Lift-A-Loft of this fact and also that the Illinois Guaranty Association would not cover any Allied insolvency cases. The letter also states that the Indiana Insurance Guaranty Association was not going to cover the Doman claim. At that point, the district court concluded, the damage was done.
 
 
 31
 Lift-A-Loft contends that its claims did not accrue until the date it first incurred out-of-pocket expenses to defend a claim covered by the Allied policy. That date was May 28, 1987. However, we think Lift-A-Loft's claim accrued much earlier. Lift-A-Loft's action accrued at least as early as January 23, 1987, as the district court decided. We think Lift-A-Loft's cause of action could have accrued when Lift-A-Loft learned that Allied went into liquidation. By the date of liquidation Lift-A-Loft knew, as Lift-A-Loft's counsel admitted at oral argument, that it had no general liability insurance. By the date of Allied's liquidation Lift-A-Loft suffered the loss of the premium it paid for insurance it did not get. Thus, applying the rule in Butler to this case Lift-A-Loft's cause of action accrued when Lift-A-Loft became aware that it no longer had general liability insurance coverage for any claims that arose under the Allied policy. If Allied's liquidation date in July of 1986 is the date that Lift-A-Loft's claims accrued, then Lift-A-Loft's May 1, 1989, filing of its negligence and contract claims is certainly too late. We think the district court correctly decided that Lift-A-Loft's claims accrued prior to May 1, 1987.[1]
 
 
 32
 Finally, we address the district court's decision regarding Oseman's third party liability to RRL. Oseman's summary judgment motion concerning its obligation to indemnify RRL under this action was resolved in favor of Oseman after the district court determined that Oseman had no liability if RRL did not. However, as we have reversed the district court's decision regarding the fraud count of Lift-A-Loft's complaint, the basis for the district court's decision no longer stands. That decision must also be reversed.
 
 CONCLUSION
 
 33
 Based on the foregoing, we affirm the district court's summary judgment decision in favor of RRL on Lift-A-Loft's negligence and contract claims. Indiana's two-year statute of limitations applied to Lift-A-Loft's claims, but since Lift-A-Loft's claim accrued prior to May 1, 1987, Lift-A-Loft filed its negligence and breach of contract claims (essentially a claim for malpractice) too late. We reverse the district court's decision regarding Lift-A-Loft's fraud claim. We think there is a genuine issue of material fact regarding that claim, and it is inappropriate to apply the two-year statute of limitations for malpractice to a viable claim for fraud when the statute of limitations for fraud is six years. Finally, because we have reversed the district court's decision regarding Lift-A-Loft's fraud claim, we must also reverse the district court's decision granting summary judgment in favor of the third party defendants. The district court's decision was predicated upon its finding that RRL was not liable to Lift-A-Loft on any of Lift-A-Loft's claims. Based on the possibility of RRL's liability to Lift-A-Loft on Lift-A-Loft's fraud count, the summary judgment granted in favor of Oseman must also be reversed.
 
 
 34
 The parties shall bear their own costs.
 
 
 35
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 [1]
 We note that even if the earlier accrual date of July 1986 is applied to Lift-A-Loft's fraud claim, on which we have reversed the district court's summary judgment decision, Lift-A-Loft's fraud claim was still timely filed and is not affected whether a January 23, 1987, accrual date is applied, or a July 1986 accrual date is applied