UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LEONARD COTTOM; KASEY COTTOM;
SKI HAWKSNEST, INCORPORATED;
HAWKSNEST FOOD & BEVERAGE,
INCORPORATED,

<em>Plaintiffs-Appellants,</em>

v.

THE TOWN OF SEVEN DEVILS; YARDY
WILLIAMS, in his official capacity;
JOE BUCHANAN, SR., in his official
and individual capacities,

<em>Defendants-Appellees,</em>

and

JOE BUCHANAN, JR., in his official
and individual capacities,

<em>Defendant.</em>

No. 01-1875

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CA-00-89)

Argued: January 25, 2002

Decided: March 8, 2002

Before WILKINSON, Chief Judge, and WILKINS and
MICHAEL, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Samuel Ranchor Harris, III, WILSON & ISEMAN, L.L.P., Winston-Salem, North Carolina, for Appellants. Andrew James Santaniello, FRANK J. CONTRIVO, P.A., Asheville, North Carolina, for Appellees. **ON BRIEF:** Grover Gray Wilson, WILSON & ISEMAN, L.L.P., Winston-Salem, North Carolina, for Appellants. Frank J. Contrivo, FRANK J. CONTRIVO, P.A., Asheville, North Carolina; Rick Queen, Asheville, North Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

   Plaintiffs Ski Hawksnest, Inc. and Hawksnest Food and Beverage, Inc. (collectively "plaintiffs" or "Hawksnest") claim that the Town of Seven Devils, the Town police chief, and the Town mayor (collectively "the Town") retaliated against them in response to the exercise of their First Amendment rights and violated their substantive due process rights. Plaintiffs brought this action under 42 U.S.C. § 1983 seeking damages for the allegedly unconstitutional conduct of the Town's police force. The district court granted summary judgment for the Town. Because plaintiffs have failed to offer sufficient evidence to establish any genuine issues of material fact, we affirm the judgment of the district court.

I.

   On April 26, 1997, a charity event known as the Spring Thaw Out Party, organized by fraternity members from Appalachian State University, was held at the Hawksnest resort in the Town of Seven Devils, North Carolina. Prior to the party, Leonard and Kasey Cottom, the operators and principal shareholders of Hawksnest, met with the

Town police chief and others to discuss security.[1] This meeting was held in part because prior Spring Thaw parties at another location had led to community complaints regarding the rowdy and drunken behavior of attendees. At this meeting, plaintiffs and the Town agreed that undercover agents from the North Carolina Alcohol Law Enforcement Division ("ALE") would be present at the party. However, the parties disagree over whether they decided that uniformed Town police would also be present. Regardless, Town police attended the party where at least six kegs of beer and assorted canned beer was provided by plaintiffs for sale. Plaintiffs allege that the police caused a disruption by, *inter alia*, interrogating and ticketing partygoers, conducting foot patrols, inspecting beverages, and harassing women customers. The party ended after ALE officers issued plaintiffs three citations for, among other things, serving an intoxicated person and selling alcohol to an underage guest.

Then, before a New Year's Eve party in 1999, the Town police chief requested that a fire marshal inspect Hawksnest. The chief stated under oath that he requested the inspection because he had learned that Hawksnest did not have an occupancy rating and he was worried that if anything happened at a crowded New Year's party, the Town might be liable for not having properly inspected the building. The fire marshal did not find any code violations and the party was held as planned. Yet plaintiffs allege that at the party, the Town police harassed them by conducting excessive patrols of the premises, shoving Leonard Cottom aside, positioning themselves in a "riot line" in the lounge, and departing suddenly, knocking over two unidentified guests and creating alarm among the other guests in the process. Plaintiffs claim that after the police left abruptly, the guests left too and many vowed not to return to Hawksnest because the party had been ruined by the police.

On January 3, 2000, the Cottoms, on behalf of Hawksnest, issued a press release complaining about the police officers' conduct at the

---

[1]Leonard and Kasey Cottom were originally plaintiffs in this action. However, the district court dismissed the Cottoms because only corporate entities, not individual shareholders, can sue on behalf of corporations. Plaintiffs did not appeal the Cottoms' dismissal, so we need not address this issue.

New Year's party. Shortly thereafter on January 13, the Cottoms met with Town officials, including the mayor and police chief, to discuss the party. Plaintiffs allege that at this meeting, the mayor criticized them for issuing the press release and stated that he would not apologize for the police action. And the police chief maintained that the officers' presence at the party constituted "routine patrol." After this meeting, the Cottoms issued another press release, filed a complaint with the Town, and Leonard Cottom spoke at a Town meeting regarding the police behavior.

Plaintiffs claim on information and belief that after the Cottoms began complaining, the Town police harassed them and their guests by, *inter alia*, intensifying patrols of Hawksnest's parking lot, increasing the stops of guests and employees on their way to or from Hawksnest, issuing more than 500 warning tickets to travelers on the only road into or out of the resort, following vehicles leaving Hawksnest at close distances, and stopping the vehicles to conduct searches and sobriety tests without probable cause. Plaintiffs assert that they lost business because of this police conduct and guests' fears that they would be subject to police scrutiny if they visited Hawksnest.

On April 26, 2000, plaintiffs initiated this action, alleging that the Town had retaliated against them in response to activities protected by the First Amendment and had violated their substantive due process rights by chilling their right to hold and promote large events at Hawksnest.[2] The district court granted summary judgment to the Town with respect to all of plaintiffs' claims. The court held that plaintiffs' First Amendment claim failed because, although plaintiffs had engaged in activities protected by the First Amendment, plaintiffs had not shown that the Town had taken "any actions against them in response to the exercise of their First Amendment rights." The district court found that plaintiffs' substantive due process claim was best understood as an allegation that the Town police violated their Fourth Amendment rights to be free from unreasonable searches during the

---

[2]Plaintiffs also claimed that the Town violated their equal protection rights and that there was an unlawful conspiracy to deprive plaintiffs of their constitutional rights. The district court granted summary judgment to the Town with respect to these claims and plaintiffs have abandoned them on appeal. Therefore, we do not address these issues.

Spring Thaw and New Year's Eve parties. The court concluded that this claim failed because plaintiffs had failed to produce "even a scintilla" of admissible evidence demonstrating that the police officers' actions were objectively unreasonable.[3] Plaintiffs appeal.

## II.

### A.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue exists when there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a party opposing a properly supported summary judgment motion bears the burden of establishing the existence of a genuine issue of material fact. *See, e.g.*, *id.* at 248-49.

The Supreme Court has stressed that Rule 56 mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The Court has made clear that a principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims." *Id.* at 323-24. Yet in reviewing a grant of summary judgment, we view the evidence in the light most favorable to the nonmoving party. *See, e.g.*, *Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001).

However, a nonmoving party may not meet its burden by resting upon mere allegations or bald assertions in the pleadings. Instead, the "party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 324; *Ander-*

---

[3]The district court alternately concluded that the individual defendants were entitled to qualified immunity on plaintiffs' substantive due process claim. Because we find that all of plaintiffs' claims fail as an evidentiary matter, we do not address qualified immunity.

*son*, 477 U.S. at 252. Rule 56 requires that a nonmoving party's supporting affidavits be based on personal knowledge and set forth facts that would be admissible in evidence at a trial. Fed. R. Civ. P. 56(e). Therefore, statements based solely on information and belief do not satisfy the requirements of Rule 56. *See, e.g.*, *Toro Co. v. Krouse, Kern & Co.*, 827 F.2d 155, 162 & n.3 (7th Cir. 1987); *Minn. Mining & Mfg. Co. v. Unites States Rubber Co.*, 279 F.2d 409, 415 (4th Cir. 1960). Likewise, hearsay statements, which would be inadmissible, do not meet Rule 56's standards. And "[m]ere speculation by the nonmoving party cannot create a genuine issue of material fact" sufficient to survive a motion for summary judgment. *Cox*, 249 F.3d at 299.

B.

In order to prove a claim for First Amendment retaliation, plaintiffs must establish three elements: (1) that their speech was protected by the First Amendment; (2) that the defendants' "alleged retaliatory action adversely affected [their] constitutionally protected speech;" and (3) "that a causal relationship exists between [their] speech and the [defendants'] retaliatory action." *Suarez Corp. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000). To satisfy this standard, it is essential that plaintiffs demonstrate that they "suffered some adversity in response to [the] exercise of protected rights." *ACLU v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993).

Plaintiffs have failed to meet their evidentiary burden. There is no dispute that plaintiffs, through the Cottoms, engaged in protected First Amendment activity when they issued press releases, filed a complaint with the Town, and spoke at a Town meeting after the 1999 New Year's Eve party. However, plaintiffs have failed to create a genuine issue of material fact as to an essential element of their retaliation claim — they have not offered sufficient evidence from which a reasonable jury could conclude that they suffered adversity in response to the exercise of their rights. In fact, plaintiffs have failed to demonstrate that the Town took any actions against them at all in response to their complaints. Instead, plaintiffs have offered only allegations and speculations to support their claim.

For example, plaintiffs allege on information and belief that the Town police intensified patrols of Hawksnest's parking lot following

the exercise of their First Amendment rights. To support this, plaintiffs rely on Leonard Cottom's affidavit. However, his affidavit fails to raise a genuine issue of material fact because it fails to provide any admissible evidence. It simply states in a conclusory fashion, repeating plaintiffs' complaint almost verbatim, that the police intensified patrols. Such conclusory affidavits are insufficient to survive a motion for summary judgment. *See, e.g.*, *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

Next, plaintiffs allege that the police increased the stops of Hawksnest guests and employees traveling to and from the resort. And plaintiffs contend that the police followed vehicles leaving Hawksnest at close distances, only to stop the vehicles to conduct searches and sobriety tests without probable cause. To support these claims, the Cottoms have stated in affidavits and depositions that they received complaints from guests and employees regarding the police activity. However, as the district court noted, "[t]his is bare hearsay" which does not raise a material issue of fact or add weight to plaintiffs' position. Notably, plaintiffs have failed to provide even one affidavit from a patron or employee setting forth their personal knowledge of the stops or stating that they stayed away from Hawksnest out of fear of the police. In fact, plaintiffs have not even produced the full names of any of the complaining citizens.

Plaintiffs also allege on information and belief that the Town police issued more than 500 warning tickets to travelers on Skyland Drive, the only road into or out of Hawksnest, and that the majority of these tickets were issued to Hawksnest guests. Once again plaintiffs have failed to provide any evidence to support this allegation. And more importantly, plaintiffs have not established a baseline of the number of citations issued before plaintiffs exercised their First Amendment rights. Therefore, plaintiffs have not produced sufficient evidence from which a reasonable jury could conclude that the police issued an excessive number of tickets in retaliation for plaintiffs exercising their First Amendment rights, or that police activity even increased in response to plaintiffs' exercise of their rights. Such a demonstration is essential for plaintiffs to meet their burden of showing that they suffered some adversity at the hands of the Town.

Plaintiffs claim that the Cottoms' testimony regarding the police activity they witnessed, their perceptions that the police activity

increased after their complaints, and their observations that Hawksnest's business decreased following their comments are sufficient to raise a disputed issue of material fact and survive summary judgment. We disagree. As the district court noted, while Leonard Cottom stated that he personally witnessed the police stopping Hawksnest guests, "he neither identifies the dates of such occurrences nor alleges that he has personal knowledge of the police increasing said stops after [p]laintiffs exercised their First Amendment rights." Likewise, Kasey Cottom's assumptions and subjective perceptions regarding police stops and searches of Hawksnest's customers and employees are insufficient to establish that the police increased the number of stops or searches. Furthermore, the police stopping Hawksnest patrons must be considered in light of the undisputed evidence that, both before and after the Cottoms became owners of the resort, the police routinely patrolled Hawksnest by conducting walk-throughs, inspecting the parking lot, and setting up check points. Plaintiffs have simply failed to offer evidence showing that the Town police increased or intensified their usual patrol activities in response to plaintiffs' exercise of their First Amendment rights. Therefore, plaintiffs cannot demonstrate that any fall off in their business was a result of police conduct.

Plaintiffs also claim that the opinion of their expert, Gerald Hotopp, serves as sufficient evidence to survive summary judgment. We are similarly unpersuaded by this argument. As the district court concluded, Hotopp's opinion "adds nothing" to plaintiffs' retaliation claim. Hotopp simply assumed the truth of plaintiffs' allegations and concluded that the police conduct was improper. However, a party cannot assure itself of a trial "merely by trotting out . . . [an] expert's naked conclusion about the ultimate issue" in the case. *Weigel v. Target Stores*, 122 F.3d 461, 469 (7th Cir. 1997) (internal quotation omitted); *see also, e.g.*, *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 421 (4th Cir. 1993).

## C.

We next turn to plaintiffs' substantive due process claim. Like the district court, we conclude that this claim is best understood as an allegation that the Town police violated plaintiffs' Fourth Amendment rights to be free from unreasonable searches during the Spring Thaw party in 1997 and the New Year's Eve party in 1999. In the

context of a business such as Hawksnest, which is closely regulated due to its license to serve alcoholic beverages, warrantless administrative searches may be reasonable for Fourth Amendment purposes. *See New York v. Burger*, 482 U.S. 691, 702 (1987). Indeed, it is undisputed that Hawksnest is subject to random searches by ALE agents and local law enforcement officers because the resort holds a North Carolina Alcoholic Beverage Control Commission ("ABC") permit. *See* N.C. Gen. Stat. § 18B-502. In order for such an administrative search to be reasonable under the Fourth Amendment, it must be conducted with certainty, regularity, and neutrality. *See Burger*, 482 U.S. at 703; *see also Turner v. Dammon*, 848 F.2d 440, 446-47 (4th Cir. 1988), *abrogated on other grounds*, *Johnson v. Jones*, 515 U.S. 304 (1995). Nevertheless, the "burden on law enforcement officials in conforming their conduct to Fourth Amendment standards is not great in the area of traditionally regulated industries." *Turner*, 848 F.2d at 447. Therefore, plaintiffs must establish the existence of a genuine issue of material fact as to the reasonableness of the Town police officers' actions at the parties.

Plaintiffs have again failed to meet their evidentiary burden. We agree with the district court that, even assuming the truth of plaintiffs' allegations concerning the police conduct at the Spring Thaw and New Year's parties, plaintiffs have not produced "even a scintilla of evidence" demonstrating the objective unreasonableness of the police officers' conduct. Instead, the undisputed facts indicate that there was a legitimate need for the Town to exercise its law enforcement powers at Hawksnest.

The Spring Thaw party was organized by local fraternity members and, when it was previously held at another location, had been plagued by community complaints regarding the rowdy and drunken behavior of attendees. Such a history of violations and complaints is a legitimate ground for increased police attention. *See, e.g.*, *Turner*, 848 F.2d at 447. And plaintiffs have failed to produce evidence showing the unreasonableness of the police activity at the party given the police department's knowledge of the complaints that had arisen in previous years and the obvious potential for problems at the plaintiffs' Spring Thaw party. The police knew that a substantial amount of alcohol would again be served. In fact, there were at least six kegs of beer in addition to assorted canned beer provided by plaintiffs for sale

and approximately 1,500 people were expected to attend. As it turned out, plaintiffs received three citations from ALE officers at the party for, *inter alia*, serving an intoxicated person and selling alcohol to an underage guest.

Likewise, plaintiffs have failed to raise a genuine issue regarding the reasonableness of the police conduct at the New Year's Eve party in 1999. It is undisputed that alcohol would be served. And there was no lodging at Hawksnest, so the police knew that people would have to drive following the party. On their face, these circumstances reasonably justify police supervision, especially in light of Hawksnest's indisputable history of ABC violations. Plaintiffs' allegation, based only on information and belief, that the Town police chief requested a fire inspection prior to the party out of some sinister desire to put plaintiffs out of business is insufficient to create a genuine issue of fact. *See, e.g.*, *Toro*, 827 F.2d at 162 & n.3. Furthermore, plaintiffs have failed to offer even one affidavit from a customer or employee who claims they were harassed by the police at the New Year's party. And the police officers' sudden departure from the party did not violate plaintiffs' constitutional rights — it is undisputed that the police were responding to a call to assist a fellow officer engaged in a vehicle chase approaching Hawksnest. Moreover, plaintiffs cannot identify the guests who were allegedly shoved to the ground in the course of the exit and the Cottoms did not personally witness anyone being knocked down. Likewise, plaintiffs have failed to produce any admissible evidence that the guests were so alarmed by the police officers' departure that they vowed to not return to Hawksnest.

The infirmity in this case is not that the plaintiffs' claims could not have been proven, but that the plaintiffs have failed to create a genuine issue as to any material fact. Their evidence is simply not of sufficient quality to reach a jury.

III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*